**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

| | | |
|---|---|---|
| IN RE CABLETRON SYSTEMS, INC. SECURITIES LITIGATION, | ) | Civil Action No. 97-542-JAD (D.N.H.) No. 99-408-S (D.R.I.) |

**PLAINTIFFS' COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

Plaintiffs' Counsel move this Court for an award of attorneys' fees in the amount of 30% of the Gross Settlement Fund and reimbursement of Plaintiffs' Counsel's out-of-pocket expenses of $986,967.63. Counsel's skill and diligence in prosecuting this case, and their willingness to take this case to trial and risk their significant investment of lodestar and out-of-pocket expenses merit the requested fee and reimbursement of expenses. The grounds for this motion are further set forth in the accompanying Memoranda of Law and the Joint Declaration of Co-Lead Counsel In Support Of The Proposed Class Action Settlement, Plan Of Allocation, And Petition For An Award Of Attorneys' Fees And Reimbursement Of Expenses.

| | |
|---|---|
| Dated: August 22, 2005 | Respectfully submitted,<br><br>**LITTLE, BULMAN, MEDEIROS & WHITNEY, P.C.**<br><br>By: ___________________<br>Matthew F. Medeiros (#1856)<br>72 Pine Street<br>Providence, RI 02903<br>Telephone: (401) 272-8080<br>Facsimile: (401) (401) 521-3555<br><br>***Local Counsel for Plaintiffs***<br><br>**MILBERG WEISS BERSHAD & SCHULMAN LLP**<br>Sanford P. Dumain<br>William C. Fredericks<br>Bruce Bernstein<br>One Pennsylvania Plaza<br>New York, NY 10119<br>(212) 594-5300<br><br>**COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.**<br>Herbert E. Milstein<br>Mark Willis<br>Julie Goldsmith<br>1100 New York Avenue, NW<br>West Tower - Suite 500<br>Washington, DC 20005-3934<br>(202) 408-4600<br><br>**STULL STULL & BRODY**<br>Jules Brody<br>Mark Levine<br>6 East 45th Street - Suite 500<br>New York, NY 10017<br>(212) 687-7230<br><br>***Plaintiffs Lead Counsel*** |

**SERVICE LIST**

I hereby certify that on this 22nd day of August, 2005, I caused to be delivered, via Federal Express or Hand Delivery (as indicated), a copy of the within Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses and accompanying Memorandum of Law in Support to the following counsel:

Paul A. Maggiott, Esq.
Law Offices of Paul A. Maggiotto
58 Pleasant Street
Concord, NH 03301-3926
VIA FEDERAL EXPRESS

Kenneth G. Bouchard, Esq.
Bouchard & Mallory, PA
1 Merrill Industrial Drive, Unit 6
Hampton, NH 03842-2223
VIA FEDERAL EXPRESS

Sanford P. Dumain, Esq.
William C. Fredericks, Esq.
Bruce Bernstein, Esq.
Milberg Weiss Bershad & Schulman, LLP
One Pennsylvania Plaza
49th Floor
New York, NY 10119
VIA FEDERAL EXPRESS

Herbert E. Milstein, Esq.
Mark Willis, Esq.
Julie Goldsmith Reiser, Esq.
Cohen, Milstein Hausfeld & Toll, PLLC
1100 New York Avenue, NW
West Tower, Suite 500
Washington, DC 20005-3934
VIA FEDERAL EXPRESS

Jules Brody, Esq.
Mark Levine, Esq.
Stull, Stull & Brody
6 East 45th Street, Suite 500
New York, NY 10017
VIA FEDERAL EXPRESS

Wilbur A. Glahn, Esq.
McLane, Graf, Raulerson & Middleton, PA
900 Elm Street
Manchester, NH 03105
VIA FEDERAL EXPRESS

Harvey J. Wolkoff, Esq.
Ropes & Gray
One International Place
Boston, MA 02110-2624
VIA FEDERAL EXPRESS

William Grimm, Esq.
Hinckley Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02903
VIA HAND DELIVERY

Veronica Sfeir

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| **IN RE CABLETRON SYSTEMS, INC. SECURITIES LITIGATION** | **C.A. 97-542JD (N.H.)**<br>**C.A. 99-408S (R.I.)** |

# PLAINTIFFS' COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF THE APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

**MILBERG WEISS BERSHAD & SCHULMAN LLP**
Sanford P. Dumain
William P. Fredericks
Bruce Bernstein
One Penn Plaza, 49th Fl.
New York, NY 10119
Telephone: (212) 594-5300

**Plaintiffs' Co-Lead Counsel**

**COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.**
Herbert E. Milstein
Julie Goldsmith Reiser
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C. 20005
Telephone: (202) 408-4600

**Plaintiffs' Co-Lead Counsel**

**STULL, STULL & BRODY**
Jules Brody
Mark Levine
6 East 45th Street
New York, NY 10017
Telephone: (212) 687-7230

**Plaintiffs' Co-Lead Counsel**

**LITTLE, MEDEIROS, KINDER, BULMAN & WHITNEY P.C.**
Matthew F. Medeiros
72 Pine Street
Providence, RI 02903
Telephone: (401) 272-8080

**Plaintiffs' Liaison Counsel**

# TABLE OF CONTENTS


**Page**

TABLE OF AUTHORITIES ........ iii

I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS ........ 2

III. THE REQUESTED ATTORNEYS' ARE FAIR AND REASONABLE ........ 3

A. Attorneys' Fees in Common Fund Cases Should Be Awarded As A Percentage Of The Fund ........ 4

B. The Requested Fee Is Well Within The Applicable Range Of Fee Awards In This Circuit ........ 6

C. The Relevant Factors Support Plaintiffs' Counsel's Request ........ 7

1. The Amount Of The Recovery ........ 8

2. Skill and Efficiency of Plaintiffs' Counsel ........ 8

3. The Complexity Of This Action ........ 10

4. Risk of Non-Payment ........ 11

5. The Amount of Time Devoted ........ 13

6. Additional Factor: The Public Interest ........ 13

7. The Lack Of Objections Also Supports the Requested Award ........ 15

IV. A LODESTAR/MULTIPLIER ANALYSIS CONFIRMS THE REASONABLENESS OF THE FEES REQUESTED ........ 15

V. PLAINTIFFS' COUNSEL SHOULD BE REIMBURSED FOR THE EXPENSES THEY INCURRED IN PROSECUTING THIS ACTION ........ 17

VI. CONCLUSION ........ 18

## TABLE OF AUTHORITIES

### FEDERAL CASES

*In re Aetna Inc. Sec. Litig.*,
No. 1219, 2001 U.S. Dist. LEXIS 68 (E.D. Pa. Jan. 4, 2001) .......... 17

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) .......... 12

*Backman v. Polaroid Corp.*,
910 F.2d 10 (1st Cir. 1990) .......... 12

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) .......... 14

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985) .......... 3. 15

*In re Beverly Hills Fire Litig.*,
639 F. Supp. 915 (E.D. Ky. 1986) .......... 17

*Blum v. Stenson*,
465 U.S. 886 (1984) .......... 5

*Boston & Me. Corp. v. Sheehan, Phinney, Bass & Green, P.A.*,
778 F.2d 890 (1st Cir. 1985) .......... 17

*Camden I Condo. Ass'n v. Dunkle*,
946 F.2d 768 (11th Cir. 1991) .......... 5

*In re Cell Pathways, Inc. Sec. Litig.*,
No. 01-CV-1189, 2002 U.S. Dist. LEXIS 18359 (E.D. Pa. Sept. 23, 2002) .......... 10

*In re Clorox Co. Sec. Litig.*,
238 F. Supp. 2d 1139 (N.D. Cal. 2002), *aff'd*, 353 F.3d 1125 (9th Cir. 2004) .......... 12

*In re Computron Software*,
6 F. Supp. 2d 313 (D.N.J. 1998) .......... 9

*Conley v. Sears, Roebuck & Co.*,
222 B.R. 181 (D. Mass. 1998) .......... 4

*In re Cont'l Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) .......... 5, 18

*In re Convergent Tech. Sec. Litig.*,
721 F. Supp. 1133 (N.D. Cal. 1988) .......... 12

*In re Corel Corp. Sec. Litig.*,
293 F. Supp. 2d 484 (E.D. Pa. 2003) ........................................ 7

*Cosgrove v. Sullivan*,
759 F. Supp. 166 (S.D.N.Y. 1991) ........................................ 17

*In re Crazy Eddie Sec. Litig.*,
824 F. Supp. 320 (E.D.N.Y. 1993) ........................................ 15

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
989 F. Supp. 375 (D. Mass. 1997) ........................................ 4

*Edmonds v. United States*,
658 F. Supp. 1126 (D.S.C. 1987) ........................................ 9

*Eisenstadt v. Centel Corp.*,
113 F.3d 738 (7th Cir. 1997) ........................................ 12

*Faircloth v. Certified Fin. Inc.*,
No. 99-3097, 2001 U.S. Dist. LEXIS 6793 (E.D. La. May 15, 2001) ........................................ 17

*In re Fleet/Norstar Sec. Litig.*,
935 F. Supp. 99 (D.R.I. 1996) ........................................ 4

*Florin v. Nationsbank of Georgia*,
34 F.3d 560 (7th Cir. 1994) ........................................ 4

*Foley v. City of Lowell, Mass.*,
948 F.2d 10 (1st Cir. 1991) ........................................ 15

*Freedman v. Value Health, Inc.*,
No. 01-7567, 2002 U.S. App. LEXIS 8383 (2d Cir. May 1, 2002) ........................................ 12

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ........................................ 4

*In re Gen. Instrument Secs. Litig.*,
209 F. Supp. 2d 423 (E.D. Pa. 2001) ........................................ 7

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000) ........................................ 4, 8

*Gottlieb v. Barry*,
43 F.3d 474 (10th Cir. 1994) ........................................ 4

*Gottlieb v. Wiles*,
150 F.R.D. 174 (D. Colo. 1993) ........................................ 17

*Grendel's Den, Inc. v. Larkin*,
749 F.2d 945 (1st Cir. 1984)....................16

*Grier v. Chase Manhattan Auto. Fin. Co.*,
No. 99-180, 2000 U.S. Dist. LEXIS 1339 (E.D. Pa. Feb. 16, 2000)....................15

*Herman & MacLean v. Huddleston*,
459 U.S. 375 (1983)....................15

*I. Meyer Pincus & Assoc., P.C. v. Oppenheimer & Co., Inc.*,
[1990-91 Transfer Binder], Fed. Sec. L. Rep. (CCH) ¶ 95,671 (S.D.N.Y. 1990)....................12

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000)....................10

*Ingram v. Coca-Cola Co.*,
200 F.R.D. 685 (N.D. Ga. 2001)....................17

*Johnston v. Comerica Mortgage Corp.*,
83 F.3d 241 (8th Cir. 1996)....................4

*Kalish v. Franklin Advisers, Inc.*,
742 F. Supp. 1222 (S.D.N.Y. 1990)....................12

*In re King Res. Co. Sec. Litig.*,
420 F. Supp. 610 (D. Colo. 1976)....................10

*LeBlanc-Sternberg v. Fletcher*,
143 F.3d 748 (2d Cir. 1998)....................16

*Lipsett v. Blanco*,
975 F.2d 934 (1st Cir. 1992)....................16

*M. Berenson Co. v. Faneuil Hall MarketPlace & Faneuil Gallery, Inc.*,
671 F. Supp. 819 (D. Mass. 1987)....................16

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)....................7, 10, 17

*Manners v. Am. Gen. Life Ins. Co.*,
No. 3-98-0266, 1999 U.S. Dist. LEXIS 22880 (M.D. Tenn. Aug. 10, 1999)....................5, 11

*Mills v. Electric Auto-Wire Co.*,
396 U.S. 375 (1970)....................17

*Miltland Raleigh-Durham v. Myers*,
840 F. Supp. 235 (S.D.N.Y. 1993)....................18

*Missouri v. Jenkins*,
491 U.S. 274 (1989) ..... 16

*In re Old CCA Sec. Litig. Crants*,
No. 3:99-0458, 2001 U.S. Dist. LEXIS 21942 (M.D. Tenn. Feb. 9, 2001) ..... 18

*In re Pub. Serv. Co.*,
No. 91-0536M, 1992 U.S. Dist. LEXIS 16326 (S.D. Cal. July 28, 1992) ..... 6

*R.I. Med. Soc'y v. Whitehouse*,
323 F. Supp. 2d 283 (D.R.I. 2004) ..... 16

*In re RJR Nabisco Sec. Litig.*,
No. 818, 1992 U.S. Dist. LEXIS 12702 (S.D.N.Y. Aug. 24, 1992) ..... 17

*RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*,
94 Civ. 5587, 2003 U.S. Dist. LEXIS 8239 (S.D.N.Y. May 15, 2003) ..... 7

*In re Prudential Bache Energy Income P'ships Sec. Litig*,
No. 888 Section E, 1994 U.S. Dist. LEXIS 6621, at *4 (E.D. La. May 18, 1994) ..... 6

*Rawlings v. Prudential-Bache Props.*,
9 F.3d 513 (6th Cir. 1993) ..... 4, 8

*Ressler v. Jacobson*,
149 F.R.D. 651 (M.D. Fla. 1992) ..... 3, 11, 15

*In re Rite Aid Corp. Sec. Litig.*,
146 F. Supp. 2d 706 (E.D. Pa. 2001) ..... 17

*Robbins v. Koger Props.*,
116 F.3d 1441 (11th Cir. 1997) ..... 12

*Roberts v. Texaco, Inc.*,
979 F. Supp. 185 (S.D.N.Y. 1997) ..... 17

*In re San Juan Dupont Plaza Hotel Fire Litig.*,
111 F.3d 220 (1st Cir. 1997) ..... 18

*In re SmithKline Beckman Corp. Secs. Litig.*,
751 F. Supp. 525 (E.D. Pa. 1990) ..... 15, 17

*Swedish Hosp. Corp. v. Shalala*,
1 F.3d 1261 (D.C. Cir. 1993) ..... 4

*In re Telectronics Pacing Sys.*,
137 F. Supp. 2d 1029 (S.D. Ohio 2001) ..... 13

*In re Thirteen App. Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*,
56 F.3d 295 (1st Cir. 1995)....................4, 5

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
724 F. Supp. 160 (S.D.N.Y. 1989)....................14

*In re Warner Communications Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985), aff'd, 798 F.2d 35 (2d Cir. 1986)....................11

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994)....................4

*Waters v. Int'l Precious Metals Corp.*,
190 F.3d 1291 (11th Cir. 1999)....................7

*Weiss v. Mercedes-Benz of N. Am.*,
899 F. Supp. 1297 (D.N.J. 1995), *aff'd*, 66 F.3d 314 (3d Cir. 1995)....................17

## STATE CASES

*Glendora Cmty. Redevelopment Agency v. Demeter*,
202 Cal. Rptr. 389 (1984)....................17

## DOCKETED CASES

*In re Allaire Corp. Secs. Litig.*,
C.A. No. 00-11972-WGY (D. Mass. Dec. 1, 2003)....................6

*In re Biogen Sec. Litig.*,
No. 94-12177-PBS (D. Mass 1999)....................12

*In re Copley Pharm. Inc. Sec. Litig.*,
C.A. No. 94-11897-WGY (D. Mass. Feb. 8, 1996)....................7

*In re Envoy Corporation Securities Litigation*,
C.A. No. 3:98-0760 (M.D. Tenn. Dec. 17, 2003)....................7

*In re Health Mgmt., Inc. Sec. Litig.*,
No. 96-CV-889 (ADS) (E.D.N.Y. 1999)....................12

*Morton v. Kurzweil Applied Intelligence, Inc.*,
C.A. No. 10829-REK (D. Mass. Feb. 4, 1998)....................7

*In re Number Nine Visual Tech. Corp. Sec. Litig.*,
C.A. No. 96-11207 (D. Mass. Feb. 6, 2001)....................6

*In re Party City Corporation Securities Litigation*,
C.A. No. 99-1353-DRD (D.N.J. May 14, 2003)....................7

*In re Peritus Software Svc., Inc. Sec. Litig.*,
C.A. No. 98-CV-10578 (D. Mass. Feb. 28, 2000) ........ 6

*In re Summit Tech. Sec. Litig.*,
C.A. No. 96-11589-JLT (D. Mass. Apr. 25, 2001) ........ 6

*In re V-Mark Software, Inc. Sec. Litig.*,
C.A. No. 95-12249-EFH (D. Mass. Nov. 24, 1998) ........ 6

*Zeid v. Open Env't Corp.*,
C.A. No. 96-12466-EFH (D. Mass. June 24, 1999) ........ 6

*In re Zoll Med. Corp. Sec. Litig.*,
C.A. No. 94-11579-NG (D. Mass. Oct. 5, 1998) ........ 7

## OTHER AUTHORITIES

Manual for Complex Litig. (Third) § 24.121 at 190 (3d ed. 1995) ........ 7

## I. INTRODUCTION

Plaintiffs' Counsel respectfully submit this memorandum of law in support of their application for an award of attorneys' fees and reimbursement of out-of-pocket expenses in connection with the prosecution and settlement of this securities class action against Cabletron Systems, Inc. ("Cabletron" or the "Company") and seven of its senior executive officers (collectively, the "Defendants").[1]

The Settlement of this Action was achieved as a result of Plaintiffs' Counsel's diligence, skill, and hard work against the determined opposition of Defendants. In prosecuting this action, Plaintiffs' Counsel spent more than 22,300 hours of professional time, representing a cumulative lodestar of more than $8,000,000, and incurred $986,967.63 in actual out-of-pocket expenses. Plaintiffs' Counsel litigated this case for more than seven years on a wholly contingent basis without any guarantee that their thousands of hours of hard work would ever be compensated, or that their significant financial outlay would ever be reimbursed. This is a case where settlement was not a foregone conclusion.

Plaintiffs' Counsel now seek fair and reasonable compensation for their efforts on behalf of the Class. The requested 30% fee would result in an attorneys fee award of approximately $3.15 million, which is <u>less</u> <u>than</u> <u>half</u> the collective lodestar for just the three Co-Lead Counsel firms (which totals approximately $8 million) let alone for all of Plaintiffs' Counsel. Plaintiffs'

---

[1] An extensive review of the facts and circumstances concerning this action, including its procedural history, Plaintiffs' factual investigation, the discovery conducted, the settlement negotiations, and the efforts of Plaintiffs' Counsel is set forth in the accompanying Declaration. Plaintiffs are also submitting herewith their Memorandum of Law in Support of Their Motion for Final Approval of the Proposed Class Action Settlement and Plan of Allocation (the "Settlement Memorandum"), which discusses the legal standards for final approval of the Settlement and demonstrates that the Settlement is fair, reasonable, and adequate given the risks and uncertainties of continued litigation.

Counsel also respectfully request reimbursement of expenses (plus interest from the date the Settlement was funded) for out-of-pocket expenses incurred in prosecuting Plaintiffs' claims.

As discussed below, the fee requested is fair, reasonable, and appropriate, and is well within the range of attorneys' fees awarded by courts in the First Circuit and across the country in cases of this type, particularly in view of the substantial risks assumed by Plaintiffs' Counsel in bringing this litigation. Indeed, the requested fee does not come close to compensating counsel for the value of their lodestar investment of time in this action. That no member of the Class has objected to the requested attorneys' fees or expense award further confirms the reasonableness of counsel's request.[2]

## II. STATEMENT OF FACTS

Among the many tasks that have been performed during the seven year course of this litigation, Plaintiffs' Counsel:

- Conducted an extensive pre-filing investigation on behalf of Plaintiffs, which involved identifying, locating and interviewing literally dozens of former Cabletron employees and collectively reviewing publicly-available materials relating to Cabletron (such as SEC filings, press releases, news articles, and analyst reports) in order to plead the claims alleged in this action with the requisite particularity and drafted the Initial Complaints (Decl. ¶7);
- Drafted the Consolidated Amended Class Action Complaint (the "Amended Complaint") and Second Consolidated Amended Class Action Complaint (the "SAC") (Decl. ¶¶9-10; 12-20);
- Opposed Defendants' multiple motions to dismiss this action (Decl. ¶¶27-29);
- Successfully appealed the dismissal of the SAC to the First Circuit (Decl. ¶¶30-33);

---

2 As discussed at in the Declaration and in the Settlement Brief, Mr. Thomas Scherer, one of the three Class Members who has sought to opt-out of the Class, alternatively objected to the Settlement and award of attorneys fees. Plaintiffs' respectfully submit that Mr. Scherer's objection must be dismissed as he has asked to exclude himself from the Class, and therefore lacks standing to file an objection.

- Organized and analyzed approximately five million pages of "paper" documents produced by Cabletron (Decl. ¶¶40-46; 59);
- Following extensive negotiations with defendants and plaintiffs' retention of an electronic discovery consultant, collected and reviewed thousands of e-mails as well as the data and other information contained in several voluminous accounting databases produced by Cabletron in electronic form (Decl. ¶¶47-53);
- Subpoenaed, reviewed and analyzed documents from numerous third parties, including the Company's outside auditor and various Cabletron customers (Decl. ¶¶54-58);
- Consulted extensively with accounting experts on relevant accounting principles and on the information developed during discovery (Decl. ¶59);
- Engaged in protracted arm's-length negotiations with Defendants' counsel concerning a settlement of the action (Decl. ¶¶70-73; 107); and
- Negotiated and drafted the final settlement papers now being presented to the Court, and the Settlement Notice and proof of claim that was mailed to Class Members (Decl. ¶¶70-73).

As discussed below, the risks assumed by Plaintiffs' Counsel in bringing this litigation and the result achieved through their efforts amply justify the requested fee, which is well within the range of fees that have been awarded in similar class actions.

## III. <u>THE REQUESTED ATTORNEYS' FEES ARE FAIR AND REASONABLE</u>

Courts have widely recognized that it is necessary to adequately compensate attorneys who assume the risks of prosecuting class action securities cases. The Supreme Court has emphasized that private actions such as this one are "a most effective weapon in the enforcement" of the securities laws and are "a necessary supplement to [SEC] action." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (citation omitted). Similarly, in *Ressler v. Jacobson*, 149 F.R.D. 651 (M.D. Fla. 1992), the Court noted:

> Attorneys who bring class actions are acting as "private attorneys general" and are vital to the enforcement of the securities laws. Accordingly, public policy favors the granting of counsel fees sufficient to reward counsel for bringing these actions and to encourage them to bring additional such actions.

*Id.* at 657. A large segment of the public would be denied a remedy for violations of the securities laws if contingent fees awarded by the courts did not fairly and adequately compensate counsel for the services provided, the serious risks undertaken, and the delay before any compensation is received.

Having secured a substantial recovery for the Class, after more than seven years of hard work, Plaintiffs' Counsel seek reasonable compensation for their efforts.

### A. Attorneys' Fees in Common Fund Cases Should Be Awarded As A Percentage Of The Fund

Courts in the First Circuit have followed the clear national trend in favor of awarding attorneys' fees in a common fund case on a percentage of the fund basis. *See, e.g., In re Thirteen App. Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995) (pointing out advantages of percentage of fund approach over lodestar approach); *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 187 (D. Mass. 1998); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375, 377 (D. Mass. 1997); *In re Fleet/Norstar Sec. Litig.*, 935 F. Supp. 99, 108 (D.R.I. 1996).[3]

---

[3] Numerous other Circuits have endorsed the percentage of recovery approach for awarding counsel fees in common fund cases. *See, e.g., Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (approving use of percentage method); *Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) (authorizing percentage method); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995), *cert. denied*, 516 U.S. 824 (1995) ("In common fund cases, a district judge can award attorneys' fees as a percentage of the fund recovered."); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994) (district court has discretion to award a percentage of the common fund); *Florin v. Nationsbank of Georgia*, 34 F.3d 560, 566 (7th Cir. 1994) ("[T]here are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration."); *Gottlieb v. Barry*, 43 F.3d 474, 484 (10th Cir. 1994) (fee award should be calculated using the percentage method; "use of the lodestar in common fund cases is 'out of fashion'"); *Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 516 (6th Cir. 1993) (district court has discretion to award a percentage of the common fund); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993) ("percentage-of-the-fund method is the appropriate

In *Thirteen Appeals*, 56 F.3d at 299, the First Circuit affirmed the District Court's award of 31% of a $220 million common fund, - - an award of roughly $68 million. The First Circuit held that "use of the POF [percentage of fund] method in common fund cases is the prevailing praxis" based upon the "distinct advantages that the POF method can bring to bear in such cases." 56 F.3d at 307. The First Circuit stressed that the percentage method is far less burdensome to administer than the lodestar method in that the percentage method does not "forc[e] the judge to review the time records of a multitude of attorneys in order to determine the necessity and reasonableness of every hour expended," and it "lessens the possibility of collateral disputes that might transform the fee proceeding into a second major litigation." *Id.* The First Circuit also noted that, unlike the lodestar method, the percentage method does not create "a monetary incentive to spend as many hours as possible" on the case; nor does the percentage method create a "disincentive to early settlement." *Id.*

In the private marketplace, contingent fee attorneys typically negotiate percentage fee agreements with their clients. *See Manners v. Am. Gen. Life Ins. Co.*, No. 3-98-0266, 1999 U.S. Dist. LEXIS 22880, at *86 (M.D. Tenn. Aug. 10, 1999). "[C]lass counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client." *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992). In non-class litigation, one-third contingency fees are the norm. *Blum v. Stenson*, 465 U.S. 886, 904 (1984) (Brennan, J., concurring) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. . . . [T]he fee is directly proportional to the recovery."); *Manners*, 1999 U.S. Dist. LEXIS 22880, at *86-87 ("If this were a non-representative litigation,

---

mechanism for determining the attorney fees award in common fund cases."); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768,774 (11th Cir. 1991) (mandating use of percentage method).

the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery.") (citation omitted).[4]

Consistent with the First Circuit's opinion in *Thirteen Appeals*, and the decisions of other Circuits also embracing the percentage method, the percentage method is the preferred method for awarding attorney fees in common fund cases.

### B. The Requested Fee Is Well Within The Applicable Range Of Fee Awards In This Circuit

There exists no set formula for determining what percentage of a common fund should be awarded as attorneys' fees. The First Circuit in *Thirteen Appeals* did not provide a definitive list of factors for the fee determination. Rather, it remarked that "in respect to fee awards, the trial court's latitude is 'extremely broad.'"

Plaintiffs' Counsel's fee request is fully consistent with fee awards made by Courts in this Circuit, and elsewhere, in securities class actions. *See, e.g., In re Allaire Corp. Secs. Litig.*, C.A. No. 00-11972-WGY (D. Mass. Dec. 1, 2003) (Young, C.J.); *In re Summit Tech. Sec. Litig.*, C.A. No. 96-11589-JLT (D. Mass. Apr. 25, 2001) (awarding one-third); *In re Number Nine Visual Tech. Corp. Sec. Litig.*, C.A. No. 96-11207 (D. Mass. Feb. 6, 2001) (awarding one-third); *In re Peritus Software Svc., Inc. Sec. Litig.*, C.A. No. 98-CV-10578 (D. Mass. Feb. 28, 2000) (awarding one-third); *Zeid v. Open Env't Corp.*, C.A. No. 96-12466-EFH (D. Mass. June 24, 1999) (awarding one-third); *In re V-Mark Software, Inc. Sec. Litig.*, C.A. No. 95-12249-EFH (D.

---

4 *See also In re Prudential Bache Energy Income P'ships Sec. Litig*, No. 888 Section E, 1994 U.S. Dist. LEXIS 6621, at *4 (E.D. La. May 18, 1994) ("Were this not a class action, attorney's fees would range between 30% and 40%, the percentages commonly contracted for in contingency cases."); *In re Pub. Serv. Co.*, No. 91-0536M, 1992 U.S. Dist. LEXIS 16326, at *20 (S.D. Cal. July 28, 1992) ("If this were a non-representative litigation, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery.").

Mass. Nov. 24, 1998) (awarding one-third); *In re Zoll Med. Corp. Sec. Litig.*, C.A. No. 94-11579-NG (D. Mass. Oct. 5, 1998) (awarding one-third); *Morton v. Kurzweil Applied Intelligence, Inc.*, C.A. No. 10829-REK (D. Mass. Feb. 4, 1998) (awarding one-third); *Abato v. Marcam Corp.*, C.A. 94-11625-WGY (D. Mass. July 29, 1996) (awarding one-third); *In re Copley Pharm. Inc. Sec. Litig.*, C.A. No. 94-11897-WGY (D. Mass. Feb. 8, 1996) (awarding one-third).[5] (Copies of all unreported decisions cited herein are contained in the Compendium of Unreported Decisions, submitted herewith.).

**C. The Relevant Factors Support Plaintiffs' Counsel's Request**

In addition to examining fee awards in similar cases, courts have considered a number of factors to determine whether a request is fair and reasonable, including, among others: the amount of the recovery; the skill and efficiency of counsel; the complexity of the litigation; the risk of nonpayment; and the amount of time devoted. *Manual for Complex Litig.* (Third)

---

5 Courts throughout the country have also regularly made fee awards of one-third or more. *See, e.g., Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1292-93 (11th Cir. 1999) (upholding award of $13,333,333, or one-third of $40 million reversionary settlement fund, plus $2.4 million of expenses, notwithstanding that only $6.4 million of fund actually was paid to claimants); *In re Envoy Corporation Securities Litigation*, C.A. No. 3:98-0760, slip op. (M.D. Tenn. Dec. 17, 2003) (awarding 33% of $11 million settlement fund); *In re Corel Corp. Sec. Litig.*, 293 F. Supp. 2d 484, 497 (E.D. Pa. 2003) ("the 33 ⅓% fee request in this complex case is within the reasonable range."); *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 94 Civ. 5587, 2003 U.S. Dist. LEXIS 8239 (S.D.N.Y. May 15, 2003) (awarding one-third of settlement fund plus expenses); *In re Party City Corporation Securities Litigation*, C.A. No. 99-1353-DRD, slip op. (D.N.J. May 14, 2003) (awarding 33% of $3.8 million settlement fund); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367-68 (S.D.N.Y. 2002) (awarding one-third of $11 million Settlement Fund, plus $200,372 in costs); *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 439 (E.D. Pa. 2001) (awarding one-third of $48 million settlement as "fair and reasonable," plus $1.85 million in reimbursement of expenses).

§ 24.121 at 190 (3d ed. 1995). *See also Goldberger*, 209 F.3d at 50.[6] Each of these factors, and additional factors considered by the courts, supports Plaintiffs' Counsel's fee request in this case.

**1. The Amount Of The Recovery**

The immediate recovery of $10,500,000 in cash, plus accruing interest – plainly provides a material benefit to the Class. As noted in the Declaration, the $10.5 million Settlement is vastly greater than the $5.8 million median recovery for all § 10(b) class actions that have settled since the passage of the PSLRA in late 1995 through December 2004, based on data recently published by Cornerstone Research.[7] That such a result was obtained in a case involving the kinds of substantial risks and uncertainties as were presented here (*see* Decl. at ¶¶ 90-98; 103-104) and where there was no restatement or government investigation, further confirm the significance of the recovery obtained. In addition, given that the Company's financial strength is in question, and that there were significant insurance coverage issues between Defendants and their insurers arising from the insolvency of one of the Company's carriers, these further factors also reflect favorably on the quality of the result. *See* Decl. ¶¶ 104; 114.

**2. Skill and Efficiency of Plaintiffs' Counsel**

In litigating this case, Plaintiffs' Counsel expended significant resources of both time and money, having shouldered the risk of committing huge resources to the litigation and allocating hundreds of hours of professional time to this intensely litigated matter. Plaintiffs' Counsel devoted more than 23,000 hours to the litigation over the course of the last seven years. *See*

---

6 Other Courts have considered similar factors. *See, e.g., Rawlings*, 9 F.3d at 516-17 (considering: (1) the value of the benefit achieved for the plaintiff class; (2) the value of the attorneys' services; (3) whether counsel undertook the services on a contingent fee basis; (4) the public's interest in rewarding attorneys who produce such benefits; (5) the complexity of the action; and (6) the professional skill and standing of all counsel involved).

7 *See* Decl. ¶ 105.

Decl. ¶ 121 . The time and energy expended by Plaintiffs' Counsel for the benefit of the Class was a significant undertaking by Plaintiffs' Counsel and confirms the reasonableness of the requested attorneys' fees.

The "prosecution and management of a complex national class action requires unique legal skills and abilities." *Edmonds v. United States*, 658 F. Supp. 1126, 1137 (D.S.C. 1987). Given the complexity of the issues and the vehement opposition of Defendants, highly skilled counsel was required to achieve the benefit earned for the Class here. Plaintiffs' Counsel are nationally recognized among complex class action litigators, particularly in the areas of securities and shareholder litigation. *See* accompanying Compendium of Plaintiffs' Counsel's Affidavits in Support of an Award of Attorneys' Fees and Reimbursement of Expenses (the "Compendium").

In addition, it should be stressed that this was not an accounting case in which defendants or their auditors ever restated the Company's financial results, or one in which the government ever charged (or even investigated, to plaintiffs' knowledge) the wrongdoing alleged in the complaint. Plaintiffs' Counsel therefore had to build their own case, and the results obtained are attributable solely to their diligence, hard work and skill.[8]

Courts have frequently viewed the quality of opposing counsel as important in evaluating the quality of the services rendered by plaintiffs' class counsel. *See In re Computron Software*, 6 F. Supp. 2d 313, 332 (D.N.J. 1998). Here, the litigation was vigorously contested. Defendants were represented by Ropes & Gray, LLP, which has a national reputation as leading defense

---

8 Although the DOJ commenced an investigation of Enterasys, and indicted three of its former employees in connection to an improper revenue recognition scheme that looked to be very similar to the one alleged in this action, the DOJ's investigation was commenced a number of years after the Initial Actions were filed, and concerned a later time period than events alleged in this Action.

counsel in securities class action litigation. In the face of this opposition, Plaintiffs were able to develop their case sufficiently to press Defendants into a $10.5 settlement. Plaintiffs' Counsel's ability to obtain the proposed settlement in the face of such opposition further confirms the superior quality of Plaintiffs' Counsel's representation.

### 3. The Complexity Of This Action

A securities case is "'by its very nature, is a complex animal . . . .'" *See Maley*, 186 F. Supp. 2d. at 372 (citations omitted); *In re Cell Pathways, Inc., Sec. Litig.*, No. 01-CV-1189, 2002 U.S. Dist. LEXIS 18359, at *26-27 (E.D. Pa. Sept. 23, 2002) (complexity and difficulty of case correlated with high risk of non-payment). Courts have long recognized the complexities and difficulties of prosecuting securities class actions. As the Court observed in *In re King Res. Co. Sec. Litig.*:

> The litigation also involved unique and substantial issues of law in the technical area of SEC Rule l0b-5, . . . difficult, complex and oft-disputed class action questions, and difficult questions regarding computation of damages.

420 F. Supp. 610, 632 (D. Colo. 1976). *See also In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA.").

As further discussed in the Declaration at ¶ 118, Plaintiffs faced substantial factual and legal hurdles in establishing Defendants' liability under the federal securities laws, which were compounded given the gaps in the relevant documents, and the faded or less sympathetic memories of key witnesses. Furthermore, even if Plaintiffs were successful in establishing liability, substantial issues would remain in proving damages and loss causation. In short, this is decidedly not a case in which the lawyers are seeking a large fee for prosecuting a "simple" or "easy" case.

### 4. Risk of Non-Payment

In addition to the litigation risk, Plaintiffs' Counsel diligently and vigorously litigated this case for over seven years, on an entirely contingent basis, with no assurance of adequate, or indeed any, compensation. Courts have consistently recognized that the contingent fee risk of non-payment, or under-payment, is a major factor in assessing an award of attorneys' fees, particularly where a contingent fee arrangement is the sole means for injured parties with limited financial resources to obtain redress. *See, e.g., In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 747 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ("Numerous cases have recognized that the attorneys' contingent fee risk is an important factor in determining the fee award.") (citations omitted).

The significant contingency risk in this case cannot be seriously disputed, as witnessed by the fact that even assuming that the requested fee is awarded in full, it will not come close to covering the base lodestar value of the attorney time that Plaintiffs' Counsel have invested in this case over the last seven years.

There are many other cases in which plaintiffs' counsel have received less than full compensation for their work. As one court has noted:

> The Court is well aware that there are numerous contingent cases such as this where plaintiff's counsel, after investing thousands of hours of time and effort, have received no compensation whatsoever. Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award . . . . In evaluating [the contingent fee] factor the Court will not ignore the pecuniary loss suffered by plaintiff's counsel in other actions where counsel receive little or no fee.

*Ressler*, 149 F.R.D. at 656-657 (citations omitted). As another Court noted: "Plaintiffs and their counsel faced the significant risk that they could have walked away from a litigation of this matter empty-handed." *Manners*, 1999 U.S. Dist. LEXIS 22880, at *78. Cases far less complex

than this one have been dismissed on summary judgment or have been lost at trial, on post-trial motions, or on appeal.[9]

Plaintiffs' Counsel agreed to prosecute this case on a wholly contingent fee basis, assuming the significant risk that they would not be compensated at all for the time and resources expended. Unlike counsel for the Defendants, who are paid substantial hourly rates and reimbursed for their out-of-pocket expenses on a regular basis, Plaintiffs' Counsel have not been compensated for any of their time (more than 22,300 hours) or reimbursed for any of the out-of-pocket expenses (more than $986,000) incurred over the more than seven years that have passed since the commencement of the litigation. Moreover, Plaintiffs' Counsel would not have been compensated for their time at all had they been unsuccessful in this action.

---

[9] *See, e.g., Freedman v. Value Health, Inc.*, No. 01-7567, 2002 U.S. App. LEXIS 8383 (2d Cir. May 1, 2002) (affirming district court's grant of summary judgment in favor of defendants); *In re Health Mgmt., Inc. Sec. Litig.*, No. 96-CV-889 (ADS) (E.D.N.Y. 1999) (jury verdict for auditor in securities class action case); *In re Biogen Sec. Litig.*, No. 94-12177-PBS (D. Mass 1999) (jury verdict for defendants in securities class action case); *Eisenstadt v. Centel Corp.*, 113 F.3d 738 (7th Cir. 1997) (appellate court affirmed the grant of summary judgment to defendants); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (appellate court overturned securities fraud class action jury verdict for plaintiffs in cased filed in 1973 and tried in 1988, on the basis of 1994 Supreme Court opinion); *In re Clorox Co. Sec. Litig.*, 238 F. Supp. 2d 1139 (N.D. Cal. 2002) (summary judgment and judgment on the pleadings granted), *aff'd*, 353 F.3d 1125 (9th Cir. 2004); *In re Apple Computer Sec. Litig.*, [1991 transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,252 (N.D. Cal. Sept. 6, 1991) (class won jury verdict against two individual defendants, but district court vacated on motion for judgment notwithstanding the verdict); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (substantial class jury verdict reversed and case dismissed after 11 years of litigation); *Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs reversed on loss causation grounds); *In re Convergent Tech. Sec. Litig.*, 721 F. Supp. 1133, 1134 (N.D. Cal. 1988), *aff'd*, 948 F.2d 507 (9th Cir. 1991) (granting summary judgment for defendants after almost 5 years of litigation); *Kalish v. Franklin Advisers, Inc.*, 742 F. Supp. 1222, 1250 (S.D.N.Y. 1990), *aff'd*, 928 F.2d 590 (2d Cir. 1991) (judgment for defendants after bench trial); *I. Meyer Pincus & Assoc., P.C. v. Oppenheimer & Co., Inc.*, [1990-91 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 95,671 (S.D.N.Y. 1990), *aff'd*, 936 F.2d 759 (2d Cir. 1991) (dismissing third amended complaint without leave to replead).

In sum, the risk of non-payment (or under-payment) assumed by Plaintiffs' Counsel in bringing this action has proved to be all too real, and further confirms that the fees requested are fair, reasonable, and appropriate.

### 5. The Amount of Time Devoted

The significant time and effort expended by Plaintiffs' Counsel over the seven years of this litigation also supports the requested fee award in this case. Plaintiffs' Counsel have a total combined lodestar of more than $8 million which represents over 22,300 hours expended in litigating this case. This enormous effort, which yielded the Settlement before the Court, was reasonable and necessary in light of the procedural history and complexity of this case, the vigorous defenses mounted by Defendants, and the need to attempt to reconstruct a massive amount of accounting data from Cabletron and third party records that in the end proved frustratingly incomplete. As the foregoing discussion makes clear, the enormous time and effort expended by Plaintiffs' Counsel without any guarantee of payment strongly supports the requested fee in this case.

### 6. Additional Factor: The Public Interest

Important public policy considerations also support the requested attorneys' fees. Absent such a class action, small individual claimants would lack the resources to litigate a case of this magnitude. "Attorneys who take on class action matters serve a benefit to society and the judicial process by enabling such small claimants to pool their claims and resources." *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 1029, 1043 (S.D. Ohio 2001). As the court held in *Union Carbide*:

> The award of attorneys' fees in complex securities class action litigation is informed by the public policy that individuals damaged by violations of the federal securities laws should have reasonable access to counsel with the ability and experience necessary to analyze and litigate complex cases. Enforcement of the federal

> securities laws should be encouraged in order to carry out the statutory purpose of protecting investors and assuring compliance. *See Bateman Eichler v. Berner*, 472 U.S. 299, 86 L. Ed. 2d 215, 105 S. Ct. 2622 (1985). A large segment of the public might be denied a remedy for violations of the securities laws if contingent fees awarded by the courts did not fairly compensate counsel for the services provided and the risks undertaken. These policies further support the award of a multiplier of counsel's lodestar fee.

724 F. Supp. 160, 169 (S.D.N.Y. 1989).

Private lawsuits, such as this one, are essential to effectuate the federal securities laws' vital purposes of protecting investors and ensuring the integrity of the financial markets. *See Basic Inc. v. Levinson*, 485 U.S. 224, 230-34 (1988) (fundamental purpose of securities laws is assuring full disclosure and honest markets; private action "constitutes an essential tool for enforcement of the 1934 Act's requirements"). "The role of class actions in the public interest has long been noted." *Manners*, No. 3-98-0266, 1999 U.S. Dist. LEXIS 22880, at *91. Thus, fair compensation to class counsel is essential:

> "Without compensation to those who are willing to undertake the inherent complexities and unknowns of consumer class action litigation, enforcement of the federal and state consumer protection laws would be jeopardized. As the Supreme Court has recognized, without a class action, small claimants individually lack the economic resources to vigorously litigate their rights. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161, 40 L. Ed. 2d 732, 94 S. Ct. 2140 (1974). Thus, attorneys who take on class action matters enabling litigants to pool their claims provide a huge service to the judicial process."

*Id.*, 1999 U.S. Dist. LEXIS 22880, at *91 (quoting *In re Rio Hair*, 1996 WL 780512, at *17).[10]

Accordingly, an award of the fees requested herein would be fully consistent with these important public policy considerations.

---

[10] *See also Bateman*, 472 U.S. at 310 ("we repeatedly have emphasized that implied private actions provide 'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [Securities & Exchange] Commission action'") (citations omitted); *Herman & MacLean v. Huddleston*, 459 U.S. 375, 386 (1983) ("A cumulative construction of the securities laws also furthers their broad remedial purposes.").

### 7. The Lack Of Objections Also Supports the Requested Award

Courts have recognized that the lack of objections from members of the class is one of the most important factors in determining an appropriate fee award. *See, e.g.*, *Foley v. City of Lowell, Mass.*, 948 F.2d 10, 19-20 (1st Cir. 1991); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 327 (E.D.N.Y. 1993); *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 533 (E.D. Pa. 1990); *Grier v. Chase Manhattan Auto. Fin. Co.*, No. 99-180, 2000 U.S. Dist. LEXIS 1339, at *17 (E.D. Pa. Feb. 16, 2000) (noting that no objections to attorneys' fees were presented at Court hearing when awarding fees of one third of settlement); *Ressler*, 149 F.R.D. at 656 (lack of objections is "strong evidence of the propriety and acceptability" of fee request).

As discussed in the Declaration (¶ 134), more than 75,000 copies of the Notice were mailed to potential Class members, and a Summary Notice was published in The Wall Street Journal. The Notice and Summary Notice advised Class members that Plaintiffs' Counsel would seek a fee "in an amount not greater than one-third (33⅓%) of the Gross Settlement Fund" plus reimbursement of their expenses "in the approximate amount of $1,000,000" plus a proportionate share of the interest earned by the Settlement Fund. As of the date of this filing, not a single objection to the fee or expense request has been received, and only three Class members have sought to opt out of the Class. The reaction of the Class therefore also supports the requested fee award.

## IV. A LODESTAR/MULTIPLIER ANALYSIS CONFIRMS THE REASONABLENESS OF THE FEES REQUESTED

That the 30% fee award sought here (equal to approximately $3,150,000) is far less than the cumulative lodestar for just the three Co-Lead Counsel firms (which exceeds $8 million) and plainly confirms the reasonableness of the fees requested.

As articulated by this Court, the "lodestar/multiplier" method entails a two-step analysis. First, to determine the lodestar, the Court multiplies the number of hours spent on the case by each professional's hourly rate. *See Lipsett v. Blanco*, 975 F.2d 934, 937 (1st Cir. 1992); *Grendel's Den, Inc. v. Larkin* 749 F.2d 945, 950-51 (1st Cir. 1984). Second, the Court adjusts the lodestar figure by applying a multiplier to reflect such factors as the risks, the contingent fee arrangement, the result obtained, and the quality of the attorneys' work. *See generally, M. Berenson Co. v. Faneuil Hall MarketPlace & Faneuil Gallery, Inc.*, 671 F. Supp. 819 (D. Mass. 1987). To compensate for the long delay Plaintiffs' Counsel encountered in receiving any compensation for their work in this case (over seven years), it is appropriate to use Plaintiffs' Counsel's current fee rates in calculating the lodestar. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989) (current rates, rather than historical rates, should be applied in order to compensate for delay in payment); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment.").[11] Plaintiffs' Counsel also made every effort to avoid duplication of work in this matter.

Plaintiffs' Counsel collectively devoted more than 22,397 hours of professional time to the prosecution of this case for an aggregate lodestar of $8,034,328. Notwithstanding the risk of this litigation, the complexity of the issues, the fully contingent nature of the engagement, the

---

[11] This court has also recognized that where "the complexities of [the] case require the particular expertise of non-local counsel." The normal billing rates of out-of-town counsel should be used, even though they may be higher than the customary rates charged in the local district. *R.I. Med. Soc'y v. Whitehouse*, 323 F. Supp. 2d 283, 292 (D.R.I. 2004) (Lagueux, S. J.) (quoting *Williams v. Poulos*, No. 94-2057 & 94-2058, 1995 U.S. App. LEXIS 10667, at *11 (1st Cir. May 12, 1995)).

skill of the attorneys, Plaintiffs' Counsel are seeking a fee that is less than half their cumulative lodestar, and one that would result in a "negative multiplier" of .39.[12]

## V. PLAINTIFFS' COUNSEL SHOULD BE REIMBURSED FOR THE EXPENSES THEY INCURRED IN PROSECUTING THIS ACTION

It is well-settled that plaintiffs who have created a common fund for the benefit of a class are entitled to be reimbursed for their out-of-pocket expenses incurred in creating the fund. *See, e.g., Mills v. Electric Auto-Wire Co.*, 396 U.S. 375, 389-98 (1970); *Gottlieb v. Wiles*, 150 F.R.D. 174, 185 (D. Colo. 1993) ("An award of expenses is warranted to class counsel under the common fund doctrine."); *In re SmithKline*, 751 F. Supp. at 534.

Plaintiffs' Counsel seek reimbursement of $986,967.63 in expenses that they have advanced to prosecute this litigation. The expenses include, *inter alia* (a) copying costs; (b) travel and lodging costs to attend Court conferences, depositions and the document review at the site of Cabletron's document warehouse in New Hampshire; and (c) fees of Plaintiffs' retained accounting and computer forensic experts, all of which are the sorts of expenses for which "the paying, arms' length market" reimburses attorneys and all of which are therefore properly

---

[12] Compare *Boston & Me. Corp. v. Sheehan, Phinney, Bass & Green, P.A.*, 778 F.2d 890, 894 (1st Cir. 1985) (awarding a multiplier of 6); *Maley*, 186 F. Supp. 2d at 369 (4.65 multiplier awarded was "well within the range awarded by courts . . . throughout the country."); *Faircloth v. Certified Fin. Inc.*, No. 99-3097, 2001 U.S. Dist. LEXIS 6793, at *36 (E.D. La. May 15, 2001) (multiplier of 3 warranted); *In re Aetna Inc. Sec. Litig.*, No. 1219, 2001 U.S. Dist. LEXIS 68, at *49 (E.D. Pa. Jan. 4, 2001) (finding 3.6 multiplier to be reasonable); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 696 (N.D. Ga. 2001) (multiplier between 2.5 and 4.0 would be reasonable); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 736 n.44 (E.D. Pa. 2001) (finding fee award equivalent to 4.5 to 8.5 lodestar multiplier "unquestionably reasonable"); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 198 (S.D.N.Y. 1997) (5.5 multiplier); *Weiss v. Mercedes-Benz of N. Am.*, 899 F. Supp. 1297, 1304 (D.N.J. 1995) (awarding fee that resulted in multiplier of 9.3 times hourly rate), *aff'd*, 66 F.3d 314 (3d Cir. 1995); *In re RJR Nabisco Sec. Litig.*, No. 818, 1992 U.S. Dist. LEXIS 12702, at *16 (S.D.N.Y. Aug. 24, 1992) (6 multiplier); *Glendora Cmty. Redevelopment Agency v. Demeter*, 202 Cal. Rptr. 389, 398-99 (1984) (12 times lodestar); *Cosgrove v. Sullivan*, 759 F. Supp. 166, 167 n.1 (S.D.N.Y. 1991) (multiplier of 8.74); *In re Beverly Hills Fire Litig.*, 639 F. Supp. 915, 924 (E.D. Ky. 1986) (5.0 multiplier).

chargeable to the Settlement Fund. *See In re San Juan Dupont Plaza Hotel Fire Litig.*, 111 F.3d 220, 220 (1st Cir. 1997); *In re Cont'l Ill.*, 962 F.2d at 570; *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients.") (citation omitted). The submitted expenses were all reasonable, necessary, and directly related to the prosecution of this action.[13]

## VI. CONCLUSION

For all the reasons stated above and in the Joint Declaration, Plaintiffs' Counsel respectfully request that the Court approve an award of attorneys' fees in the amount of 30% of the Gross Settlement Fund and reimbursement of Plaintiffs' Counsel's expenses in the amount of $986,967.63 (with interest at the same rate as earned by the Settlement Fund from the date the Fund was created until the date the expenses are paid).

[13] It is also appropriate for the Court to award interest on the expenses awarded. *See e.g., In re Old CCA Sec. Litig. v. Crants*, No. 3:99-0458, 2001 U.S. Dist. LEXIS 21942, at *3-4 (M.D. Tenn. Feb. 9, 2001) (awarding plaintiffs' counsel a percentage of the Settlement Fund plus litigation expenses incurred, "together with the interest earned thereon for the same period and at the same rate as that earned on the Settlement Fund until paid").

Dated: August 22, 2005

Matthew F. Medeiros (#1856)
**LITTLE, MEDEIROS, KINDER, BULLMAN & WHITNEY P.C.**
72 Pine Street
Providence, RI 02903
Telephone: (401) 272-8080

***Plaintiffs' Liaison Counsel***

**MILBERG WEISS BERSHAD & SCHULMAN LLP**
Sanford P. Dumain
William P. Fredericks
Bruce D. Bernstein
One Penn Plaza, 49th Fl.
New York, NY 10119
Telephone: (212) 594-5300

**COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.**
Herbert E. Milstein
Julie Goldsmith Reiser
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C. 20005
Telephone: (202) 408-4600

**STULL STULL & BRODY**
Jules Brody
Mark Levine
6 East 45th Street
New York, NY 10017
Telephone: (212) 687-7230

***Plaintiffs' Co-Lead Counsel***