**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

| | | |
|---|---|---|
| IN RE CABLETRON SYSTEMS, INC. SECURITIES LITIGATION, | ) | Civil Action No. 97-542-JAD (D.N.H.) No. 99-408-S (D.R.I.) |

# PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

Plaintiffs move this Court to grant final approval of the proposed settlement with Defendant Cabletron Systems, Inc., S. Robert Levine, Craig R. Benson, David J Kirkpatrick, Paul R. Duncan, Donald F. McGuiness and Michael D. Myerow. Lead Plaintiffs submit that the proposed settlement, consisting of $10,500,000 in cash, plus interest earned thereon, is an excellent recovery for the Class and should be granted final approval. The grounds for this motion are further set forth in the accompanying Memoranda of Law and the Joint Declaration Of Co-Lead Counsel In Support Of The Proposed Class Action Settlement, Plan Of Allocation, And Petition For An Award Of Attorneys' Fees And Reimbursement Of Expenses.

| | |
|---|---|
| Dated: August 22, 2005 | Respectfully submitted,<br><br>**LITTLE, BULMAN, MEDEIROS & WHITNEY, P.C.**<br><br>By: Matthew F. Medeiros /SKO<br>Matthew F. Medeiros (#1856)<br>72 Pine Street<br>Providence, RI 02903<br>Telephone: (401) 272-8080<br>Facsimile: (401) (401) 521-3555<br><br>***Local Counsel for Plaintiffs***<br><br>**MILBERG WEISS BERSHAD & SCHULMAN LLP**<br>Sanford P. Dumain<br>William C. Fredericks<br>Bruce Bernstein<br>One Pennsylvania Plaza<br>New York, NY 10119<br>(212) 594-5300<br><br>**COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.**<br>Herbert E. Milstein<br>Mark Willis<br>Julie Goldsmith<br>1100 New York Avenue, NW<br>West Tower - Suite 500<br>Washington, DC 20005-3934<br>(202) 408-4600<br><br>**STULL STULL & BRODY**<br>Jules Brody<br>Mark Levine<br>6 East 45th Street - Suite 500<br>New York, NY 10017<br>(212) 687-7230<br><br>***Plaintiffs Lead Counsel*** |

**SERVICE LIST**

I hereby certify that on this 22nd day of August, 2005, I caused to be delivered, via Federal Express or Hand Delivery (as indicated), a copy of the within Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and accompanying Memorandum of Law in Support to the following counsel:

Paul A. Maggiott, Esq.
Law Offices of Paul A. Maggiotto
58 Pleasant Street
Concord, NH 03301-3926
VIA FEDERAL EXPRESS

Kenneth G. Bouchard, Esq.
Bouchard & Mallory, PA
1 Merrill Industrial Drive, Unit 6
Hampton, NH 03842-2223
VIA FEDERAL EXPRESS

Sanford P. Dumain, Esq.
William C. Fredericks, Esq.
Bruce Bernstein, Esq.
Milberg Weiss Bershad & Schulman, LLP
One Pennsylvania Plaza
49th Floor
New York, NY 10119
VIA FEDERAL EXPRESS

Herbert E. Milstein, Esq.
Mark Willis, Esq.
Julie Goldsmith Reiser, Esq.
Cohen, Milstein Hausfeld & Toll, PLLC
1100 New York Avenue, NW
West Tower, Suite 500
Washington, DC 20005-3934
VIA FEDERAL EXPRESS

Jules Brody, Esq.
Mark Levine, Esq.
Stull, Stull & Brody
6 East 45th Street, Suite 500
New York, NY 10017
VIA FEDERAL EXPRESS

Wilbur A. Glahn, Esq.
McLane, Graf, Raulerson & Middleton, PA
900 Elm Street
Manchester, NH 03105
VIA FEDERAL EXPRESS

Harvey J. Wolkoff, Esq.
Ropes & Gray
One International Place
Boston, MA 02110-2624
VIA FEDERAL EXPRESS

William Grimm, Esq.
Hinckley Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02903
VIA HAND DELIVERY

Veronica Sque

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| IN RE CABLETRON SYSTEMS, INC.<br>SECURITIES LITIGATION | C.A. 97-542JD (N.H.)<br>C.A. 99-408S (R.I.) |

**PLAINTIFFS' MEMORANDUM OF LAW IN**
**SUPPORT OF THEIR MOTION FOR FINAL APPROVAL OF THE PROPOSED**
**CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 2

I. General Standards Governing This Court's Consideration Of The Settlement ..... 2

II. THE SETTLEMENT SHOULD BE APPROVED AS FAIR, REASONABLE, AND ADEQUATE, AND IN THE BEST INTERESTS OF THE CLASS ..... 3

III. THE PROPOSED PLAN OF ALLOCATION IS FAIR AND ADEQUATE ..... 12

IV. THE COURT-APPROVED NOTICE OF THE SETTLEMENT AND FAIRNESS HEARING COMPLIED WITH THE REQUIREMENTS OF DUE PROCESS AND THE PSLRA ..... 13

V. THIS COURT SHOULD EXERCISE ITS DISCRETION IN FAVOR OF CERTIFYING THE CLASS FOR PURPOSES OF SETTLEMENT ..... 15

A. The Prerequisites of Rule 23(a) Are Met ..... 17

B. The Requirements for Rule 23(b)(3) Have Been Met ..... 21

VI. CONCLUSION ..... 22

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Adair v. Sorenson*,
134 F.R.D. 13 (D. Mass. 1991) .......... 20

*In re Am. Bank Note Holographics*,
127 F. Supp. 2d 418 (S.D.N.Y. 1999) .......... 13

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .......... 16, 17, 21, 23

*In re Bank of Boston Corp. Sec. Litig.*,
762 F. Supp. 1525 (D. Mass. 1991) .......... 21

*In re Biogen Sec. Litig.*,
179 F.R.D. 25 (D. Mass. 1997) .......... 17

*Burstein v. Applied Extrusion Techs., Inc.*,
153 F.R.D. 488 (D. Mass. 1994) .......... 20

*Bussie v. Allmerica Fin. Corp.*,
50 F. Supp. 2d, 59 (D. Mass. 1999) .......... 3, 4, 9, 11

*In re Carbon Black Antitrust Litig.*,
Civ. No. 03-10191-DPW, 2005 U.S. Dist. LEXIS 660 (D. Mass. Jan. 18, 2005) .......... 21, 22

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) .......... 9

*City P'ship v. Atl. Acquisition Ltd. P'ship*,
100 F.3d. 1041 (1st Cir. 1996) .......... 3, 10

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) .......... 12

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
216 F.R.D. 197 (D. Me. 2003) .......... 3

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
177 F.R.D. 54 .......... *passim*

*Durrett v. Housing Auth. of Providence*,
896 F.2d 600 (1st Cir. 1990) .......... 3

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) .......... 15

*Eisenberg v. Gagnon*,
766 F.2d 770 (3d Cir. 1985) .......... 16

*In re Fleet/Norstar Sec. Litig.*,
935 F. Supp. 99 (D.R.I. 1996) .......... 3

*Gen. Tel. Co. of Southwest v. Falcon*,
457 U.S. 147 (1982) .......... 18

*Giusti-Bravo v. United States Veterans Admin.*,
853 F. Supp. 34 (D.P.R. 1993) .......... 7, 8, 11

*Gorsey v. I.M. Simon & Co.*,
121 F.R.D. 135 (D. Mass. 1988) .......... 18

*Greenspun v. Bogan*,
492 F.2d 375 (1st Cir. 1974) .......... 9, 16

*Guckenberger v. Boston Univ.*,
957 F. Supp. 306 (D. Mass. 1997) .......... 20

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
142 F.R.D. 588 (S.D.N.Y. 1992) .......... 4

*Hammon v. Barry*,
752 F. Supp. 1087 (D.D.C. 1990) .......... 4

*In re Polymedica Corp. Sec. Litig.*,
224 F.R.D. 27 (D. Mass. 2004) .......... 19, 20

*Lamphere v. Brown Univ.*,
71 F.R.D. 641 (D.R.I. 1976) .......... 17

*Lessard v. Metropolitan Life Ins. Co.*,
103 F.R.D. 608 (D. Me. 1984) .......... 16

*M. Berenson Co. v. Fanueil Hall Market Place, Inc.*,
671 F. Supp. 819 (D. Mass. 1987) .......... 3, 10

*Maher v. Zapata Corp.*,
714 F.2d 436 (5th Cir. 1983) .......... 15

*Mathewson Corp. v. Allied Marine Industries, Inc.*,
827 F.2d 850 (1st Cir. 1987) .......... 7

*McLaughlin v. Liberty Mut. Ins. Co.*,
224 F.R.D. 304 (D. Mass. 2004) .......... 19

*In re MicroStrategy, Inc. Sec. Litig.*,
148 F. Supp. 2d (E.D. Va. 2001) ........ 12, 13

*Modell v. Eliot Sav. Bank*,
139 F.R.D. 17 (D. Mass. 1991) ........ 22

*In re New England Mut. Life Ins. Co. Sales Practices Litig.*,
183 F.R.D. 33 (D. Mass 1998) ........ 20

*In re One Bancorp Sec. Litig.*,
136 F.R.D. 526 (D. Me. 1991) ........ 16

*In re Painewebber Ltd. P'ships. Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997) ........ 10, 11

*Randle v. SpecTran*,
129 F.R.D. 386 (D. Mass. 1988) ........ 18

*Risinger v. Concannon*,
201 F.R.D. 16 (D. Me. 2001) ........ 17

*In re Rite Aid Corp. Sec. Litig.*,
269 F. Supp. 2d 603 (E.D. Pa. 2003) ........ 12

*Robbin v Koger Props.*,
129 F.3d 617 (11th Cir. 1997) ........ 6

*Rodrigues v. Members Mortgage Co.*,
226 F.R.D. 147 (D. Mass 2005) ........ 18

*Rolland v. Cellucci*,
191 F.R.D. 3 (D. Mass. 2000) ........ 8

*Smilow v. Southwestern Bell Mobile Sys., Inc.*,
323 F.3d 32 (1st Cir. 2003) ........ 17

*Stoetzner v. U.S. Steel Corp.*,
897 F.2d 115 (3d Cir. 1990) ........ 11

*In re Sunrise Sec. Litig.*,
131 F.R.D. 450 (E.D. Pa. 1990) ........ 12

*United States v. Cannons Eng'g. Corp.*,
720 F. Supp. 1027 (D. Mass. 1989) ........ 10

*United States v. DiBiase*,
45 F.3d 541 (1st Cir. 1995) ........ 7

*In re Warner Communications Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985) .......... 4

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
208 F.3d 288 (1st Cir. 2000) .......... 23

**STATE CASES**

*Denney v. Jenkins & Gilchrist*,
2005 WL 388562 (S.D.N.Y. Feb. 18, 2005) .......... 16

*In re Initial Public Offering*,
2004 WL 2297401 (S.D.N.Y. Oct. 13, 2004) .......... 16

*McAdams v. Massachusetts Mut. Life Ins. Co.*,
2002 WL 1067449 (D. Mass. May 15, 2002) .......... 16

*In re Oracle Sec. Lit.*, No. C-90-0931-VRW,
1994 WL 502054 (N.D. Cal. June 18, 1994) .......... 12

**FEDERAL STATUTES**

15 U.S.C. § 78u-4(a)(7) .......... 14

F.R.C.P. 23(a)(1) .......... 18

Fed. R. Civ. P. 23(a)(4) .......... 21

**OTHER AUTHORITIES**

Manual for Complex Litigation (Fourth) § 21.631 .......... 16

## PRELIMINARY STATEMENT

Plaintiffs respectfully submit this Memorandum of Law in support of their application for a final order and judgment, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, approving the proposed settlement (the "Settlement") of this consolidated securities class action. By order dated May 13, 2005, this Court: (i) granted Plaintiffs' motion for preliminary approval of the Settlement (the "Preliminary Approval Order"); (ii) preliminarily certified this Action as a class action and appointed Lead Plaintiffs as Class Representatives for settlement purposes; and (iii) directed notice to the Class. The Settlement provides for the immediate creation of a fund of $10,500,000 in cash, plus interest earned thereon (the "Gross Settlement Fund") for the benefit of the Class.

As demonstrated below and in the accompanying Declaration of Co-Lead Counsel in Support of the Proposed Class Action Settlement, Plan of Allocation, and Petition for an Award of Attorneys' Fees and Reimbursement of Expenses (the "Declaration"), dated August 17, 2005, the Settlement satisfies the requirements of Rule 23(e) of the Federal Rules of Civil Procedure. Likewise, the proposed plan of allocation (the "Plan of Allocation") is consistent with the theories that Plaintiffs would likely proffer at trial, and is fair and reasonable. Moreover, not a single Class Member has filed an objection to either the Settlement, the Plan of Allocation, or the application of Plaintiffs' Counsel for fees and reimbursement of expenses.[1]

Although Plaintiffs' Counsel believe in the merits of this action, Plaintiffs were faced with the reality of having to try this case against Defendants, including the former governor of

---

[1] As set forth below, Mr. Thomas Scherer, one of the three Class Members who has sought to opt-out of the Class, alternatively objected to the Settlement and award of attorneys fees. As discussed more fully herein, Plaintiffs respectfully submit that Mr. Scherer lacks standing to file an objection, and therefore it must be rejected.

New Hampshire, in a case in which many potentially pivotal documents were missing (including, *inter alia*, the emails of several of the Defendants), and in a case where certain key witnesses were not as forthcoming with favorable testimony as they had been more than seven years ago when those witnesses spoke informally to Plaintiffs' investigators. Given the gaps in the relevant documents, the faded or less sympathetic memories of key witnesses, and the complexities inherent in proving any §10(b) case for accounting fraud, litigating this action through trial would have been a difficult and risky task. Based upon a realistic assessment of the risks of further proceedings, Plaintiffs respectfully submit that the Settlement is fair, reasonable, and adequate, and should be granted final approval.[2]

## ARGUMENT

### I. General Standards Governing This Court's Consideration Of The Settlement

Rule 23(e)(1)(A) states that the "court must approve any settlement, voluntary dismissal, or compromise of the claims, issues or defenses of a certified class." Rule 23(e)(2) states: "The parties seeking approval of a settlement, voluntary dismissal, or compromise under Rule 23(e)(1) must file a statement identifying any agreement made in connection with the proposed settlement, voluntary dismissal, or compromise."

In determining whether final approval should be given to a class action settlement, the Court must determine whether a proposed settlement is fair, reasonable and adequate. *Duhaime*

---

[2] An extensive review of the facts and circumstances concerning this action, including its procedural history, Plaintiffs' factual investigation, the discovery conducted, the settlement negotiations, and the efforts of Plaintiffs' Counsel is set forth in the accompanying Declaration. This memorandum focuses on applicable legal standards for approval of a proposed class action settlement under Rule 23(e) of the Federal Rules of Civil Procedure. The request for attorney's fees and reimbursement of expenses is addressed in Plaintiffs' Memorandum of Law in Support of Plaintiffs' Counsel's Application for an Award of Attorneys Fees and Reimbursement of Expenses (the "Fee Memorandum"), which is filed simultaneously herewith.

*v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1, 7 (1st Cir. 1999); *In re Fleet/Norstar Sec. Litig.*, 935 F. Supp. 99, 105 (D.R.I. 1996). The Court must undertake an assessment of the terms of the Settlement, the interests of the Class Members as well as any third parties that might be affected by the settlement, and the circumstances of the litigation and the proposed settlement. *See Duhaime*, 183 F.3d at 7; *Durrett v. Housing Auth. of Providence,* 896 F.2d 600, 604 (1st Cir. 1990). A court reviewing a settlement "is not to decide whose assertions are correct, but merely to ascertain whether the district court clearly abused its discretion in approving the settlement." *City P'ship v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d, 1041, 1043-44.

In addition, courts in this Circuit have held that a presumption in favor of settlement is to be found "[W]hen sufficient discovery has been provided and the parties have bargained at arms-length." *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996); *In re Compact Disc Minimum Advertised Price Antitrust Litig.,* 216 F.R.D. 197, 207 (D. Me. 2003), *M. Berenson Co. v. Fanueil Hall Market Place, Inc.,* 671 F. Supp. 819, 822 (D. Mass. 1987).

## II. THE SETTLEMENT SHOULD BE APPROVED AS FAIR, REASONABLE, AND ADEQUATE, AND IN THE BEST INTERESTS OF THE CLASS

The relevant factors courts in this Circuit consider in evaluating the fairness of a class action settlement include: (1) the potentially significant obstacles to a recovery; (2) the complexity and likely duration of the litigation; (3) the stage of the proceedings at which the settlement was reached; (4) the amount of the settlement in light of the risks of litigation; (5) whether the settlement was reached after arm's length negotiations and the opinion of qualified counsel; and (6) the reaction of the class to the proposed settlement. *See Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d, 59, 76 (D. Mass. 1999); *Duhaime*, 177 F.R.D. at 67-68; *Fleet/Norstar*, 935 F. Supp. at 105; *Berenson*, 671 F. Supp. at 822. When assessed in light of the

foregoing criteria, the Settlement is plainly fair, reasonable and adequate, and should be granted final approval.

### *1. The Potentially Significant Obstacles to a Recovery*

Basic to the fairness inquiry is "the need to compare the terms of the compromise with the likely rewards of litigation." *Bussie*, 50 F. Supp. 2d at 76 (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982)); *see also Duhaime*, 177 F.R.D. at 68 (relief in settlement must be weighed in relation to "the plaintiffs' likelihood of success on the merits"); *Hammon v. Barry*, 752 F. Supp. 1087, 1095 (D.D.C. 1990) (court must "evaluate the strengths and weaknesses of the class members' claims within the framework of their likelihood of establishing liability and damages at trial"). Thus, in assessing a settlement, a Court should balance the *immediacy* and *certainty* of a recovery for the class against the continuing risks of litigation. *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 591-92 (S.D.N.Y. 1992); *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 741 (S.D.N.Y. 1985), *aff'd* 798 F.2d 35 (2d Cir. 1986).

Here, there were significant obstacles with respect to obtaining any recovery. Specifically, Plaintiffs recognize that the central problem in this case -- and one that would remain no matter how many more months or years were spent collecting and dissecting Cabletron's incomplete documentary record -- is that Plaintiffs had no ability to go beyond this gap-filled record to gather the kind of documentary evidence that would fill in the gaps that are present here. Although Plaintiffs believe that the absence of relevant documentation from Cabletron's files (and from third parties) actually support their allegations concerning the alleged fraud, and would be one of the many factors that an expert would consider to be relevant to a final analysis of whether fraud occurred, Defendants would present a completely different

picture of the relevant facts and circumstances and would have "gaps" in the documentary record with self-serving explanations. That would not be contradicted through documents.

The significant gaps that Plaintiffs found in Cabletron's surviving documentary records illustrate a few of the significant problems that plaintiffs faced in this case:

- Although Plaintiffs' attorneys and accounting experts spent considerable time reviewing Cabletron's paper records in a warehouse in New Hampshire, certain basic accounting data and records (including customer correspondence files and records of product returns) were incomplete;

- Although Defendants eventually restored and produced a sample set of e-mails to Plaintiffs, this production was also incomplete, *e.g.,* the e-mail boxes for two Individual defendants – former CEO Benson and former President Levine and several other witnesses – were purportedly missing (and never produced);

- Although Defendants produced a huge volume of accounting data (amounting to untold millions of separate pieces of information) on a series of computer disks, data from early in the class period was woefully incomplete and the later "SAP" database also lacked explanations of various transactions; and

- A number of third parties who had conducted business with Cabletron during the Class Period (*i.e.*, Cabletron customers, sellers, and distributors) had either destroyed or lost many of the documents relevant to the purported transactions at issue in this litigation.

In short, even assuming this case proceeded to trial (which would require Plaintiffs to have defeated Defendants' remaining pre-trial dispositive motions, and any other dispositive motion ultimately filed) Defendants could well have persuaded a jury to find in their favor. Throughout the litigation, Defendants vigorously contested issues of liability and damages, and Plaintiffs bear the burden of establishing each of the elements (including scienter) of the Exchange Act claims brought against the Defendants. Plaintiffs' allegations would require a jury to understand and consider complex accounting standards and calculations -- an even more daunting task in a case where the Company did not restate its financial statements, and where defendants argued, *inter alia*, that they had adequate reserves for any "improper" sales that were later reversed.

In addition, even if Plaintiffs overcame the obstacles presented by, among other things, this action being more than seven years old, and ultimately succeeded on each and every one of the liability issues, Plaintiffs also would face substantial risks in proving causation and damages. For example, Defendants would likely have argued that their conduct did not cause the Class to sustain any monetary damages, and that Plaintiffs therefore cannot establish loss causation. The parties would also likely disagree on the following damage issues: (a) the appropriate economic model for determining the amounts by which Cabletron securities allegedly were artificially inflated (if at all) during the Class Period; (b) the amounts by which Cabletron securities allegedly were artificially inflated (if at all) during the Class Period; (c) the effect of various market forces influencing the trading prices of Cabletron securities at various times during the Class Period; (d) the extent to which external factors, such as general market and industry conditions, influenced the trading prices of Cabletron securities at various times during the Class Period; and (e) the extent to which the various matters that Plaintiffs allege were materially false or misleading influenced (if at all) the trading prices of Cabletron securities at various times during the Class Period.

Although Plaintiffs would present expert testimony to sustain their burden on the damages issues, one cannot predict how a jury will weigh competing experts' testimony. In other words, the crucial element of damages would likely be reduced at trial to a "battle of the experts." In such a battle, Co-Lead Counsel recognize the possibility that a jury could be swayed by Defendants' experts, who would seek to minimize or eliminate the amount of Plaintiffs' losses by showing that the losses were attributable to factors other than the alleged misstatements and omissions. *See, e.g.*, *Robbin v Koger Props.*, 129 F.3d 617 (11th Cir. 1997) (finding no loss causation and overturning $81 million jury verdict).

In sum, trial of this case presented substantial risks with respect to establishing liability and damages. When measured against the Settlement obtained, the foregoing risks strongly favored settlement of this action.

*2. The Complexity, Expense, and Likely Duration of Litigation*

This "fairness" factor captures the "prudential policy favoring settlement as a preferred alternative to costly, time-consuming litigation." *Mathewson Corp. v. Allied Marine Industries, Inc.*, 827 F.2d 850, 852 (1st Cir. 1987); *see also United States v. DiBiase*, 45 F.3d 541, 546 (1st Cir. 1995) ("[S]ettlements reduce excessive litigation expenses and transaction costs."); *Manual* for *Complex Litigation* (Fourth), § 13.22 ("One of the major incentives to settle is to avoid the cost and burden of further discovery.") Without a doubt, in a "complex class action involving prolonged litigation," such as this case, "settlements are strongly favored by the courts because they represent the easiest, and quickest, way of disposing of the case." *Giusti-Bravo v. United States Veterans Admin.*, 853 F. Supp. 34, 35-36 (D.P.R. 1993).

The delay that would be caused by and expenses incurred by prosecuting this complex litigation through trial against the Defendants is itself a factor weighing strongly in favor of approving the Settlement. As discussed above and in the Declaration, this litigation is replete with complexity in both establishing liability and in proving damages. Even assuming Plaintiffs' defeated Defendants' Motions to Strike and to Dismiss the SAC, Defendants likely would move for summary judgment, which would take a number of months to brief, argue and be resolved by the Court.

Moreover, even assuming success in defeating summary judgment motions, trial of this action would take many additional months. Moreover, in light of the highly contested nature of the case, any judgment would inevitably be the subject of post-trial motions and appeals, further prolonging the case for several years. The Settlement avoids these risks.

*3. The Stage of Proceedings and the Amount of Discovery Completed*

The third "fairness" factor looks at whether sufficient discovery had been completed for both sides to understand the strengths and weaknesses of their respective cases. *See, e.g., Giusti-Bravo*, 853 F. Supp. at 38 (finding that although substantial discovery still remained, the amount of discovery already conducted was sufficient to permit "an accurate assessment of each party's chances at trial"); *Rolland v. Cellucci*, 191 F.R.D. 3, 8 (D. Mass. 2000), *aff'd* 318 F.3d 42 (1st Cir. 2003) (finding discovery to be sufficient given that the parties had a voluminous amount of information at the time as well as the advice and reports of their experts). Courts consider the stage of litigation at which a settlement is reached "because it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Duhaime*, 177 F.R.D. at 67 (*citing Armstrong v. Board of School Directors of Milwaukee*, 616 F.2d 305, 325 (7th Cir. 1980).

As Co-Lead Counsel has prosecuted vigorously this action for more than seven years, they are well informed of the strengths and weaknesses of Plaintiffs' claims and Defendants' defenses. Indeed, Co-Lead Counsel reached the Settlement only after thoroughly analyzing Plaintiffs' claims under the applicable law, briefing opposition papers to Defendants' multiple motions to dismiss, and preparing briefs in support of their appeal to the First Circuit. In addition, even with the gaps in discovery discussed in the Declaration, Plaintiffs engaged in wide-ranging document and electronic discovery, including the review and analysis of millions of pages of documents and electronic accounting databases.

Through these efforts, Plaintiffs' Counsel gained a thorough understanding of the legal and factual issues involved in the litigation, which allowed them to evaluate the relative merits of each side's case with respect to liability and damages. Plaintiffs' Counsel strongly believe that the Settlement is in the best interests of the Class.

### 4. *The Range of Reasonableness of the Settlement in Light of the Likely Recovery and all the Attendant Risks of Litigation*

The amount of the recovery being provided to the Class must be weighed against the obstacles to any recovery in this litigation. *See Duhaime*, 177 F.R.D. at 68 (approving settlement where plaintiffs faced several significant viable legal defenses); *Bussie*, 50 F. Supp. 2d at 76 ("[T]he reality that the Class would encounter significant, and potentially insurmountable, obstacles to a litigated recovery underscores the reasonableness of the compromise set forth in the Settlement Agreement."). The fact that the Class could have theoretically received more if the case had been successfully litigated is not a reason to deny approval of the settlement. *See Duhaime*, 177 F.R.D. at 68 ("In evaluating the substantive fairness of a class action settlement, the court cannot, and should not, use as a benchmark the highest award that could be made to the plaintiff after full and successful litigation of the claim."); *see also Greenspun v. Bogan*, 492 F.2d 375, 381 (1st Cir. 1974) ("[A]ny settlement is the result of a compromise -- each party surrendering something in order to prevent unprofitable litigation, and the risks and costs inherent in taking litigation to completion."); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 & n.2 (2d Cir. 1974) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.").

Plaintiffs believe that the evidence in this action, when pieced together, would be sufficient to show that the Defendants defrauded the public. Defendants, however, would present a completely different picture of the relevant facts and circumstances. As discussed herein and described throughout the Declaration, the outcome of the action against the Defendants was highly uncertain, an uncertainty which is eliminated by the proposed Settlement.

In addition, there was no assurance that the Company would have the resources to pay a substantially larger verdict. For example, as of last winter, the total market capitalization of Enterasys, Cabletron's corporate successor, had fallen to only a few hundred million dollars -- far less than the multi-billion dollar market capitalization that the Company had when this action was first brought. By way of comparison, according to recently published data by Cornerstone Research, the median settlement for all § 10(b) cases (which, like this case, require proof that Defendants acted with scienter) that have settled since the PSLRA was passed in 1995 is $5.8 million. *See* "Post Reform Act Securities Settlements: Updated through December 2004," authored by L. Simmons and E. Ryan (available at www.cornerstone.com), dated march 2005, at 17.

A consideration of all the various risk factors reveals that the $10.5 million Settlement represents a meaningful and beneficial recovery for the Class.

*5. The Settlement was Reached After Arm's Length Negotiations*

When a proposed settlement is the result of arm's length negotiations among experienced counsel and parties, there is a presumption that the proposed settlement is fair and reasonable. *See City P'ship Co.*, 100 F.3d at 1043 ("When sufficient discovery has been provided and the parties have bargained at arm- length, there is a presumption in favor of the settlement"); *Berenson*, 671 F. Supp. at 822 (where "a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair"); *Duhaime*, 177 F.R.D. at 68 (same); *United States v. Cannons Eng'g. Corp.*, 720 F. Supp. 1027, 1036 (D. Mass. 1989), *aff'd*, 899 F.2d 79 (1st Cir. 1990) (same); *In re PaineWebber Ltd. P'ships. Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) (counsel are most closely acquainted with the facts of the underlying litigation and their recommendations should therefore be accorded "great weight").

Collusion is not an issue with respect to the Settlement. The parties fought hard over the course of more than seven years of litigation, which included extensive motion practice, an appeal to the First Circuit, and extensive discovery. The settlement negotiations themselves were intense, hard-fought and conducted at arm's length between experienced and skilled attorneys. Qualified and experienced counsel for both sides, who are intimately familiar with all facets of this case recommend final approval of the Settlement. The Settlement is therefore clearly entitled to a presumption of fairness based on the negotiations.

*6. Reaction of the Class to the Settlement*

Another indication of the fairness of a class action settlement is "the lack of, or small number of, objections." *Giusti-Bravo*, 853 F. Supp. at 40. Courts in the First Circuit have found the "number of requests for exclusion from the settlement, as well as the number and substance of objections filed" to be relevant to a court's analysis of a settlement. *Bussie* , 50 F. Supp. 2d at 77; *see also In re Painewebber*, 171 F.R.D. at 106 (noting that favorable reaction of class to settlement, although not dispositive, constitutes strong evidence of fairness of proposed settlement and supports judicial approval); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 119 (3d Cir. 1990) (29 objections out of a 281 member class "strongly favors settlement").

Here, the Class has embraced the proposed Settlement. In accordance with the Court's Order of May 13, 2005, Co-Lead Counsel caused to be mailed a total of more than ***75,000*** copies of the Notice of Pendency to Class Members, and also published a summary notice (the "Summary Notice") of the proposed class action settlement and hearing in *The Wall Street Journal*. The Notice informed Class Members of their right to object to the Settlement. The deadline for filing objections, as set forth in the Notice and the Summary Notice, was August 1, 2005. *No objections have been received from any Class Member*. As one court has stated in similar circumstances:

> Given the very large stock losses class members have suffered, to say nothing of the sheer number of class members, the lack of any objection can only be regarded as astonishing.

*In re Rite Aid Corp. Sec. Litig.*, 269 F. Supp. 2d 603, 608 (E.D. Pa. 2003).

As set forth above and discussed in the Declaration, Mr. Thomas Scherer, one of the three Class Members who has sought to opt-out of the Class, alternatively objected to the Settlement and award of attorneys fees. Plaintiffs respectfully submit, however, that Mr. Scherer's objection must be rejected as he has asked to exclude himself from the Class, and therefore lacks standing to file an objection. *See In re Sunrise Sec. Litig.*, 131 F.R.D. 450, 459 (E.D. Pa. 1990) ("[a]s a general rule, only class members have standing to object to a proposed class settlement").

Nevertheless, even if Mr. Scherer did have standing to bring such an objection, which he does not, it is essentially a bare-boned attack on class action attorneys that should not weigh against approving any aspect of the Settlement. Indeed, Mr. Scher's objection entirely ignores Co-Lead Counsel's efforts in this matter, which were set forth in the Notice, and were pivotal in achieving the Settlement for the Class. *See* Scherer Objection, attached to the Affidavit of Jose C. Fraga Re: (A) Mailing of the Notice and Proof of Claim (B) Report on Exclusion Requests Received, Exhibit A at 7-9 (filed contemporaneously herewith).

## III. THE PROPOSED PLAN OF ALLOCATION IS FAIR AND ADEQUATE

"To warrant approval, the plan of allocation must also meet the standards by which the partial settlement was scrutinized – namely, it must be fair and adequate. *In re MicroStrategy Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 668 (E.D. Va. 2001) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992); *In re Oracle Sec. Lit.*, No. C-90-0931-VRW, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994) ("[A] plan of allocation [that] reimburses class members based on the extent of their injuries is generally reasonable. It is also reasonable

to allocate more of the settlement to class members with stronger claims on the merits"). Therefore, as noted in *MicroStrategy*, 148 F. Supp. 2d at 669: "[a] plan of allocation . . . fairly treats class members by awarding a *pro rata* share to every Authorized Claimant, [even as it] sensibly makes interclass distinctions based upon, *inter alia,* the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue" (emphasis added).

The proposed Plan of Allocation herein was fully described in the Notice to the Class. It was formulated by Plaintiffs' Counsel with the goal of reimbursing Class members in a fair and reasonable manner. As a result, each similarly-situated authorized claimant will receive a *pro rata* share of the Net Settlement Fund (*i.e.*, $10.5 million plus interest, less any attorneys' fees and expenses), with that share to be determined by the ratio that an authorized claimant's allowed claim bears to the total allowed claims of all authorized claimants.

That not one Class Member -- each of whom has an interest that the proceeds of the Gross Settlement Fund is allocated fairly -- has objected to the Plan of Allocation is compelling evidence that the Plan is both fair and reasonable. Co-Lead Counsel's conclusion that the Plan of Allocation is fair and reasonable is also entitled to great weight. *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 429 (S.D.N.Y. 1999) (approving allocation plan and according counsel's opinion "considerable weight").

For these reasons, the Plan of Allocation is fair, reasonable and adequate and should be approved.

## IV. THE COURT-APPROVED NOTICE OF THE SETTLEMENT AND FAIRNESS HEARING COMPLIED WITH THE REQUIREMENTS OF DUE PROCESS AND THE PSLRA

In the Preliminary Approval Order, the Court specified the manner in which notice of the proposed Settlement and the Settlement Hearing was to be disseminated to class members in

order to meet the requirements of Federal Rule of Civil Procedure 23, the PSLRA, and due process. Plaintiffs have complied with this Court's Order.[3]

Plaintiffs gave notice by both publication and first class mail. Specifically, as set forth in the Fraga Affidavit, Plaintiffs diligently attempted to identify shareholders, either through a shareholder list delivered by Defendants to the Garden City Group, or by a mailing of Notices and Proof of Claim forms to the largest brokerage firms, institutions, banks and other nominees maintained in a database by the Claims Administrator. As a result, 75,102 copies of the Notice and Proof of Claim forms were sent, by first class mail, to shareholders, brokerage firms, banks, and nominees. In addition, the Summary Notice of Settlement, the form and content of which had been approved by the Court, was published in the national edition of *The Wall Street Journal* on June 2, 2005. *See* Affidavit of John J. Mills Re: Publication of the Summary Notice of Pendency of Class Action, Proposed Settlement and Settlement Hearing (filed contemporaneously herewith).

As the notice process herein was tailored to reach as many members of the Classes as practicable, it meets the due process requirements of Rule 23 established in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974) ("individual notice must be provided to those class members who are identifiable through reasonable effort" supplemented by publication notice).

---

[3] The PSLRA prescribes the manner in which the terms of a settlement are disclosed to Class Members, and the Notice in the instant case clearly satisfies these requirements. *See* 15 U.S.C. § 78u-4(a)(7) (notice must contain: a description of the recovery, including the amount to be distributed to the class (Notice at 2), a statement on the potential outcome of the case, including disagreement on the amount of damages (Notice at 2); a statement that plaintiffs' counsel intend to apply to the court for an award of attorneys' fees and reimbursement of expenses, as well as the amounts of both that will be sought (Notice at 2); identification of representatives of plaintiffs' counsel to whom inquires may be directed (Notice at 14); the reasons for settlement (Notice at 3); and any other information required by the court).

In addition, with respect to the form and content of the Notice, the court in *MicroStrategy* adopted the standard applied in *Maher v. Zapata Corp.*, 714 F.2d 436, 451 (5th Cir. 1983):

> The notice adequately described the nature of the pending action, the claims asserted therein [citation omitted], and the general terms of the proposed settlement. It informed the shareholders that additional information was available from the court's files. It also informed them of the time and place for the settlement hearing and their right to participate therein. [citations omitted.] In view of this information, it is clear that the essential purpose of the notice, with regard to the shareholders' due process rights, "namely, to fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them . . ." was satisfied. [citation omitted.]

The form and content of the Notice in the instant case complies with all of these requirements: (1) the nature of the action, the claims asserted by the Plaintiffs, the Defendants' denials thereof, as well as a description of the discovery process, are set forth in detail; (2) the general terms of the proposed settlement and the Plan of Allocation are described therein; (3) it informed shareholders of their ability to examine the court files; (4) it informed shareholders of the date, time and place for the Settlement Hearing and the subjects which would be addressed at the Settlement Hearing; (5) it informed shareholders of their rights to either make a claim in the Settlement, by filing a Proof of Claim, or to request to be excluded from the Settlement Classes; (6) it informed shareholders of their rights to be heard at the Settlement Hearing and the manner in which they should file and serve written objections to the Settlement; (7) it informed shareholders that Plaintiffs' counsel would seek an award of attorneys' fees and reimbursement for expenses, and the maximum amounts to be requested; and (8) it informed shareholders of the parameters of the Settlement Class provisionally approved by this Court on May 13, 2005.

## V. THIS COURT SHOULD EXERCISE ITS DISCRETION IN FAVOR OF CERTIFYING THE CLASS FOR PURPOSES OF SETTLEMENT

For purposes of Settlement, the putative Class must meet the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. *Amchem Prods., Inc. v. Windsor*, 521 U.S.

591 (1997)[4]. Class action litigation has long been recognized by the courts as an essential tool for adjudication of cases involving multiple claims that are susceptible to similar factual and/or legal inquiries, and for which individual recovery might be too modest to warrant prosecution of the case on an individual basis. As a result, in evaluating a motion to certify, "district courts in this circuit have frequently recognized that 'Rule 23(a) should be liberally construed in order not to undermine the policies underlying the class action rule.'" *McAdams v. Massachusetts Mut. Life Ins. Co.*, 2002 WL 1067449, at *2 (D. Mass. May 15, 2002) (*quoting Lessard v. Metropolitan Life Ins. Co.*, 103 F.R.D. 608, 610 (D. Me. 1984)) (emphasis added). Indeed, securities fraud actions are particularly well-suited for class certification. *See, e.g., In re One Bancorp Sec. Litig.*, 136 F.R.D. 526, 533 (D. Me. 1991) ("This Court concurs with the numerous cases that have discussed the desirability and utility of the class action device in the context of federal securities law litigation"); *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985) ("the effectiveness of the securities laws may depend in large measure on the application of the class action device").

Rule 23 of the Federal Rules of Civil Procedure provides that an action may be maintained as a class action if each of the four prerequisites of Rule 23(a) is met and also the action qualified under one of the subdivisions of Rule 23(b). Importantly, the inquiry as to whether the requirements of Rule 23 have been satisfied does not extend to the merits of plaintiffs' claims. Rather the focus is limited to whether the prerequisites of Rule 23 are met. *In*

---

[4] Plaintiffs have the burden of showing that the proposed class comports with Rule 23 and the burden of establishing that the Settlement should be approved. *Greenspun*, 492 F.2d at 378; *see also* Manual for Complex Litigation (Fourth) § 21.631. However, "'a district court is forbidden to weigh the evidence on class certification [and] plaintiffs need not establish the elements of Rule 23 by a preponderance of the evidence.'" *Denney v. Jenkins & Gilchrist*, 2005 WL 388562, at *6 (S.D.N.Y. Feb. 18, 2005) (*citing In re Initial Public Offering*, 2004 WL 2297401, at *19 (S.D.N.Y. Oct. 13, 2004) (citation omitted).

*re Biogen Sec. Litig.*, 179 F.R.D. 25, 41 (D. Mass. 1997) ("a Court does not consider the merits of a claim in determining class certification"); *Risinger v. Concannon*, 201 F.R.D. 16, 22 (D. Me. 2001) ("Class certification is not an appropriate mechanism 'to conduct a preliminary inquiry into the merits of a suit'"). Therefore, for purposes of class certification, the allegations of the Complaint must be accepted as true. *See, e.g. Lamphere v. Brown Univ.*, 71 F.R.D. 641, 646 (D.R.I. 1976) (acknowledging the "usual policy of accepting the plaintiff's factual allegations as true for purposes of class certification").

As demonstrated below, Plaintiffs satisfy the prerequisites of Rule 23(a) and the requirements of Rule 23(b)(3) that a class action is superior to alternative methods for fairly and efficiently adjudicating defendants' alleged violations of the securities laws. Accordingly, class certification is appropriate and should be granted for purposes of this settlement.

### A. The Prerequisites of Rule 23(a) Are Met

Rule 23(a) of the Federal Rules of Civil Procedure requires a party seeking class certification to satisfy four prerequisites: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003) (*citing Amchem*, 521 U.S. at 613). In this case, as set forth below, all four requirements of Rule 23(a) have been met.

#### *1. The Proposed Class Is So Numerous that Joinder of All Members Is Impracticable*

To satisfy the numerosity requirement, the proposed class must be "so numerous that joinder of all members is impracticable." F.R.C.P. 23(a)(1). To establish numerosity, plaintiffs need only demonstrate that it would be difficult or inconvenient to join all members of the class. *See Gorsey v. I.M. Simon & Co.*, 121 F.R.D. 135, 138 (D. Mass. 1988) (holding joinder of group of 800-900 to be impracticable). Here, where estimates of the number of persons who purchased

Cabletron common stock numbers in the thousands, numerosity is easily satisfied. As of July 2, 1997, Cabletron had more than 157 million shares of common stock outstanding. The proposed class, therefore, plainly satisfies the numerosity requirement of Rule 23. *See, e.g. Randle v. SpecTran*, 129 F.R.D. 386, 390 (D. Mass. 1988) (certifying a class where several million shares of common stock were outstanding and actively traded).

2. *There are Questions of Law and Fact Common to the Class and the Proposed Class Representatives' Claims are Typical of Those of the Class*

The commonality requirement is met if "there are questions of law or fact common to the class." Rule 23(a)(2). Typicality, on the other hand, requires that the claims of the named plaintiffs be typical of the class claims. Rule 23(a)(3). Frequently, the requirements of Rule 23(a)(2) and (a)(3) are considered together. *See Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n. 13 (1982); *Rodrigues v. Members Mortgage Co.*, 226 F.R.D. 147, 151 (D. Mass 2005). Essentially, both requirements are in place "to ensure that maintenance of a class action is economical and that the named plaintiff's claim and the class claims are so interrelated that the interests of the Class Members will be fairly and adequately protected in their absence." *Gen. Tel. Co.*, 457 U.S. at 157 n. 13.

The commonality requirement of Rule 23(a)(2) is satisfied even if there is only a single issue common to the entire class. *See, e.g., McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304, 309 (D. Mass. 2004) (while requiring that "questions of law or fact be shared by the prospective class," Rule 23(a)(2) does not require that "every question be common."). Indeed, the commonality requirement is a "low hurdle" requiring that questions of law or fact be common to the class. *Duhaime*, 177 F.R.D. at 63 (D. Mass. 1997). Commonality asks only whether the "resolution of the common questions affect all or a substantial number of the class members." *Id.; see also In re Polymedica Corp. Sec. Litig.*, 224 F.R.D. 27, 35 (D. Mass. 2004) (although

class members must share some questions in common, not all questions need to be common to the class).

Here, Plaintiffs have alleged that Defendants engaged in a scheme to artificially inflate the price of Cabletron securities during the class period by issuing false and misleading statements that they knew to be false when made. These allegations give rise to numerous questions of law and fact common to the Class, including, among others:

(a) whether Defendants' acts and omissions, alleged in the SAC, violated the federal securities laws;

(b) whether Defendants misrepresented material facts about the business, management, products, sales, markets, financial condition, and business prospects of Cabletron;

(c) whether Defendants acted knowingly or recklessly in issuing false and misleading statements;

(d) whether, during the Class Period, the market price of Cabletron securities was artificially inflated due to the material misrepresentations and/or non-disclosures complained of, and;

(e) to what extent members of the Class sustained damages and the proper measure of those damages.

These central issues at issue here, which are common to all Class Members' claims, satisfy the requirement that there be common questions of law or fact. *See, e.g. In re New England Mut. Life Ins. Co. Sales Practices Litig.*, 183 F.R.D. 33, 39 (D. Mass 1998) (court able to identify common issues of act and law where allegations were of common course of fraudulent conduct by high-level decision makers).

With respect to typicality, "[t]he central inquiry in determining whether a proposed class has typicality is 'whether the class representatives' claims have the same essential characteristics as the claims of the other members of the class." *In re Polymedica*, 224 F.R.D. at 36; *see also Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 325 (D. Mass. 1997) (*quoting In re Bank of Boston Corp. Sec. Litig.*, 762 F. Sup. 1525, 1532 (D. Mass. 1991); *Burstein v. Applied Extrusion Techs., Inc.*, 153 F.R.D. 488, 491 (D. Mass. 1994); *Adair v. Sorenson*, 134 F.R.D. 13, 17 (D. Mass. 1991). Generally, a class representative's claim is found to be typical where his or her "injuries arise from the same events or course of conduct as do the injuries that form the basis of the class claims" and where they stem from "the same legal theory" as those of absent class members. *In re Bank of Boston*, 762 F. Supp. 1525, 1532 (D. Mass. 1991).

Here, Plaintiffs satisfy the typicality inquiry because they allege they were injured by Defendants' scheme to artificially inflate the price of Cabletron's stock and therefore contend that Defendants violated the federal securities laws and, in particular, the Exchange Act. In short, the proposed Class Representatives are purchasers of Cabletron securities who seek to prove Defendants' liability on theories that are identical to those available to other Class Members and based on an identical set of facts as set forth in the SAC and discussed in the Declaration. Accordingly, the proposed Class Representatives' claims are typical of the Class.

*3. The Proposed Class Representatives Will Fairly and Adequately Protect the Interests of the Class*

The adequacy of representation prong concerns the adequacy of a proposed class representative and their counsel. Fed. R. Civ. P. 23(a)(4). The adequacy prong "serves to uncover conflicts of interest between [the] named parties and the class they seek to represent." *Amchem Prods. v. Windsor*, 521 U.S. 591, (1997). It also determines whether counsel are "qualified, experienced, and able to vigorously conduct the proposed litigation." *In re Carbon*

*Black Antitrust Litig.*, Civ. No. 03-10191-DPW, 2005 U.S. Dist. LEXIS 660, at *55 (D. Mass. Jan. 18, 2005) *quoting Andrews v. Bechtel Power Corp.*, 780 F.2d 124 (1st Cir. 1985). Each of these elements is satisfied here.

As demonstrated above, the proposed Class Representatives' interests are not antagonistic to or in conflict with the interests of other Class Members. Plaintiffs allege that Defendants issued materially false and misleading statements with scienter that misled the investing public about, among other things, Cabletron's financial performance and the success of its operations. These allegations affect Plaintiffs and all other class members alike. Thus, Plaintiffs have been damaged by the same alleged conduct, and possess the incentive to fairly represent all class members' claims to achieve the maximum possible recovery.

Additionally, having suffered substantial monetary losses as a result of the misconduct alleged in the SAC, Plaintiffs have been committed to the vigorous prosecution of this action. Lead Plaintiffs are represented by counsel who have extensive experience in securities litigation and have the ability and willingness to protect the interests of the class. *See Modell v. Eliot Sav. Bank*, 139 F.R.D. 17, 23 (D. Mass. 1991) (approving lead counsel because counsel was "familiar with and experienced in this type of litigation"). Indeed, as demonstrated by their conduct over the past 7 years, Co-Lead Counsel have vigorously litigated this action.

### B. <u>The Requirements for Rule 23(b)(3) Have Been Met</u>

As noted above, in addition to meeting the prerequisites of Rule 23(a), an action must satisfy at least one of the three conditions of subdivision (b) of Rule 23. Rule 23(b)(3) is met where class resolution of an action is "superior to other available methods for the fair and efficient adjudication of the controversy." In particular, a court considers four factors in determining whether a class action would be superior: the interest individuals may have in controlling the prosecution of separate actions; whether litigation already has been commenced

by members of the class; the desirability of litigating the claims in the particular forum; and any difficulties likely to arise in managing the class action.

Class actions are appropriate where, as here, individual claims may be so small as to make it unlikely that class members would bring claims on their own because the costs of litigation would be higher than the value of any individual claim. *Duhaime*, 177 F.R.D. at 65 (citation omitted); 128 F.R.D. 165, 171 (D. Mass. 1989); *In re Carbon*, 2005 U.S. Dist. LEXIS 660, at *55 *quoting Alexander v. Q.T.S. Corp.*, 1999 U.S. Dist. LEXIS 11842, at *42 (N.D. Ill. July 30, 1999) ("In light of the great costs of discovery and trial, class certification is particularly important where many small and medium sized claimants are involved who would not otherwise be able to secure relief"). It also is preferable to concentrate these claims in a single forum rather than in numerous locations throughout the country. *Id.* Finally, the Supreme Court, in *Amchem*, held that a district court need not determine the manageability prong of Rule 23(b)(3) if reviewing a settlement-only class. *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000) (*citing Amchem*, 521 U.S. at 620). Accordingly, the Court need not reach the issue of whether the proposed class would be manageable.

Here, to require individual members of the Class to bring multiple actions against the Defendants would result in an enormous duplication of judicial effort and expense – not to mention that such actions would face the same obstacles with respect to discovery that Plaintiffs faced in this litigation.

In sum, Plaintiffs have demonstrated that the Class should be certified for settlement purposes because the requirements of Rule 23 have been met.

## VI. CONCLUSION

For all of the reasons set forth above, in the Declaration, and in the accompanying application for attorneys' fees and expenses, Plaintiffs respectfully request that this Court grant

final approval of the Settlement and the Plan of Allocation as fair and adequate to the Class, and approve the process by which notice of the Settlement and Settlement Hearing was given.

Dated: August 22, 2005

Respectfully Submitted,

**LITTLE, MEDEIROS, KINDER, BULMAN, & WHITNEY, P.C.**

By: Matthew F. Medeiros (SWP)
Matthew F. Medeiros (#1856)
72 Pine Street
Providence, RI 02903
Telephone: (401) 272-8080

**Local Counsel for Plaintiffs**

**COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.**
Herbert E. Milstein
Julie Goldsmith Reiser, Esq.
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC 20005
Telephone: (202) 408-4600

**MILBERG WEISS BERSHAD & SCHULMAN LLP**
Sanford P. Dumain
William P. Fredericks
Bruce D. Bernstein
One Pennsylvania Plaza
New York, NY 10119-0165
Telephone: (212) 594-5300

**STULL STULL & BRODY**
Jules Brody
Mark Levine
6 East 45th Street
New York, NY 10017
Telephone: (212) 687-7230

**Co-Lead Counsel for Plaintiffs**